Fred R. ZEMINA, Petitioner,

v.

Herman SOLEM, as the Duly Appointed, Qualified and Acting Warden of the South Dakota State Penitentiary, Respondent.

Civ. No. 76–4090.

United States District Court,
D. South Dakota, S. D.

Sept. 22, 1977.

Stuart Tiede, Woods, Fuller, Shultz & Smith, Sioux Falls, S. D., for petitioner.

Peter H. Lieberman, Asst. Atty. Gen., Pierre, S. D., for respondent.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

Petitioner, Fred R. Zemina, seeks a Writ of Habeas Corpus, alleging that his confinement under the custody of Herman Solem, Warden of the South Dakota Penitentiary, is based on a conviction in state court for first degree manslaughter that was the result of proceedings that deprived him of various fourth, sixth, and fourteenth amendment rights. Specifically, the petitioner alleges that the state proceedings were constitutionally and jurisdictionally invalid for the following reasons:

I. The trial court deprived him of a jury trial and denied him of his liberty without due process of law when it refused his requested instructions as to excusable homicide, justifiable homicide, self-defense and defense of third persons.

II. The trial court deprived him of a jury trial and denied him due process of law when it overruled his objections to the prosecution's instructions on aiding and abetting.

III. Improper comments by the prosecution in closing argument deprived petitioner of his rights to due process of law and a fair trial.

IV. The suppression by the State of a letter regarding the competency of a potentially crucial defense witness deprived the petitioner of his rights to due process of law and a fair trial.

V. The suppression by the State of exculpatory evidence in the form of the summary of an interview that reflected on the credibility of a government witness deprived the petitioner of his rights to due process of law and a fair trial.

VI. The admission of a rifle into evidence at the trial violated petitioner's constitutional right to freedom from unreasonable search and seizure, and testimony made in support of the admission of the rifle was false and misleading.

VII. Petitioner was denied effective assistance of counsel.

VIII. Unreasonable delay in preparation of the trial transcript denied petitioner of a meaningful appeal and constituted a denial of due process of law.

IX. Petitioner was denied trial in the county wherein the alleged offense occurred.

X. The county wherein the alleged offense occurred was Indian Country and the State was without jurisdiction.

XI. The cumulative effect of all of these errors deprived petitioner of fundamental constitutional rights.[1]

FACTS AND PROCEDURAL HISTORY

Petitioner was a resident of Todd County, South Dakota, which is the present area of the Rosebud Indian Reservation. Todd County is an unorganized county attached to Tripp County. Petitioner is a white person who married an Indian and was living with her on a ranch located in the same general vicinity as the house where Ed and Bruce Zemina, brothers of the petitioner, were living. Also living in the immediate vicinity was Kenneth Fernen, Sr., the deceased, a white rancher who lived on his ranch with his family. The parties had been neighbors for many years.

In 1966 Fernen failed to apply for the right to lease Indian lands which the Fernen family had previously leased for many years. Clara Zemina, the wife of petitioner, applied for the leasing rights to certain lands immediately adjacent to Fernen's house. Following this, the relationship between the Zeminas and Fernen began to rapidly deteriorate. The driveway to Fernen's house, which was located on the leased land, was closed by the Zeminas when they took possession of the land and Fernen was forced to put in a new driveway. The Zeminas also fenced the newly leased acreage primarily because Fernen continued to graze livestock on the property even though he no longer retained any lease rights. During the period from 1966 to 1969, the Bureau of Indian Affairs Police and Todd/Tripp County Sheriff's officers

were called to the area on numerous occasions to settle minor disputes. On one occasion while petitioner was erecting his fence, Fernen assaulted him and struck him several times. Petitioner commenced a civil action against Fernen and obtained a judgment in the amount of approximately $2,500.00. The friction between Fernen and the Zeminas culminated in a violent incident on November 8, 1969.

Fred and Bruce Zemina spent the afternoon of November 8, 1969, working in a hay field. Fernen spent the afternoon in several small communities in Nebraska buying some parts. It is undisputed that Fernen consumed alcoholic beverages in at least two bars and also that he acquired a case of wine and a 12 pack of beer. Fernen returned to South Dakota in the late afternoon and stopped to visit a neighbor about 5:15 p. m. While visiting with the neighbor Fernen consumed a can of beer. The Zeminas could be seen working in the hay field some distance away and Fernen and his neighbor joked about them. The neighbor noticed at this time that Fernen had a .22 rifle.

The Zeminas quit work sometime after 5:30 p. m. as darkness was approaching and headed home. Fred Zemina was driving the lead tractor and pulling a hay baler. Bruce Zemina was driving the second tractor pulling a hay sled with a stack of hay. The brothers were dressed almost identically. Both tractors were heading east. Fernen left the neighbor's ranch sometime after the Zeminas started home. Fernen came up behind the Zeminas as they were headed east and followed them. At about 5:50 p. m. Fernen's daughter, Connie Fernen Grablander, was headed west on the same road. She approached and passed the first tractor driven by Fred Zemina. She testified that as she approached the second tractor, driven by Bruce Zemina, Bruce forced her off the road. The tractor then stopped. After re-starting her automobile she met her father in his pickup a short distance behind the hay sled. She stopped and talked to her father for a little while.

1. All of these claims are elaborated upon in the subsequent text and footnotes.

Fernen was upset with the Zeminas, at least initially, and called them a "dumb outfit". Fernen opened another can of beer while Connie was talking to him. Connie then drove away. She testified that as she was driving away she looked into her rear view mirror and saw the petitioner walking toward her father's pickup. The time would have been approximately 6:00 p. m.

The only evidence submitted at the trial concerning what transpired after Connie drove away was the testimony of the petitioner. He testified that Bruce was the first person to approach Fernen's pickup and that he, the petitioner, only approached the pickup after he heard the horn blowing and thought it was stuck. He further testified that a violent struggle was in progress when he first approached the truck and that he heard a gun go off as he came up. Fernen and Bruce were fighting over the .22 rifle and Fernen was choking Bruce. The petitioner testified that he said, "hey, what the heck is going on here? Let go of him", and gave Fernen a punch. Fernen replied, "I shot Bruce and I am going to get you." The struggle continued and after Bruce said "he shot me really bad" and "I think I am dying", Fred tried to grab the gun. He testified that as he did so Fernen kicked him in the nose and knocked him down. Fred heard the gun go off again. When he got up he saw Bruce and Fernen both still with their hands on the gun and Fernen was trying to pull the clip out. Fred heard the gun go off again and then Bruce fell back with the gun and then hit Fernen with it saying "stay there now you son of a bitch. I got the gun." Bruce and the petitioner then left, Bruce saying that he wanted to take the gun because it was the one that shot him.

Fernen's son found him shortly thereafter, lying on the ground on the passenger side of the pickup. Later investigation showed that the ground on the passenger's side was scuffed up. A scoop shovel was found in the pickup and Fernen's keys were found 20 to 25 feet away, two details that were never attempted to be explained at trial. Fernen was taken from the scene to the hospital in Rosebud. He had fractured jaws, a gunshot wound in the neck and one through the forehead that caused brain damage that resulted in his death at approximately 8:15 p. m. Because of the amount of blood on his face, the gunshot wounds were not immediately apparent. A blood sample was taken from the decedent about 8:30, approximately 2½ hours after the wounds were received. Analysis showed that the sample contained 0.06% alcohol by weight. The State chemist testified that alcohol oxydizes in the blood at a rate of about .012 to .020 per hour.

After picking up petitioner's wife and another brother, Ed, Bruce was taken to a Winner hospital where he was treated for an abdominal gunshot wound. Both Bruce's and Fernen's wounds were made by the same .22 rifle. Petitioner was later treated for facial abrasions, a broken nose and two broken ribs.

On the way to the hospital with Bruce, Fred Zemina stopped and called a member of the tribal police force and told him to go investigate the scene. Petitioner said there had been a set-to with Fernen, that Bruce had taken a rifle from Fernen, that Bruce had been shot and that Fernen had gone for another gun in his belt. No other gun was ever found. Petitioner also tried to call his attorney at this time, but was unsuccessful.

Later that night, pursuant to a search warrant, the Sheriff of Todd/Tripp counties searched petitioner's car in the Winner hospital parking lot. The .22 rifle was found on the rear floorboard under some clothes.

Both petitioner and Bruce Zemina were charged with murder, but Bruce has never been brought to trial. He was not rational at the time he was treated for the gunshot wound and continued to act irrationally for several months. Bruce was eventually committed to the Yankton State Hospital where he remains. Both petitioner and Bruce were represented by the same counsel for some time, but he withdrew as counsel for Bruce on August 15, 1970, after Bruce was committed and approximately one month before petitioner's trial.

Petitioner's trial commenced in Tripp County on September 21, 1970. He was found guilty of first degree manslaughter on September 28, 1970. Petitioner was sentenced to life imprisonment on October 15, 1970. His motion for a new trial was denied on January 11, 1971.

Petitioner perfected a timely appeal to the South Dakota Supreme Court on January 22, 1971. Following many delays in the preparation of the trial transcript, the conviction was affirmed on May 4, 1973, after the filing of briefs and the holding of oral arguments. State v. Zemina, 87 S.D. 291, 206 N.W.2d 819 (1973), reh. denied June 18, 1973.

A petition for a Writ of Habeas Corpus was denied in this court on September 27, 1972, because the state appeal was pending. On January 15, 1973, petitioner was informed that he was ineligible for post conviction relief in state circuit court for the same reason.

Following the denial of his direct appeal, petitioner filed another petition for post conviction relief in the state courts on December 26, 1973, amended on July 17, 1974, and October 16, 1974. Hearings were held on January 18, July 17 and December 12, 1974, and the prayer for post conviction relief was denied on January 13, 1975. Petitioner did not appeal this denial to the South Dakota Supreme Court.

The present petition for a Writ of Habeas Corpus was filed in this court on September 24, 1976, and was amended on February 15, 1977. A hearing was held on March 7, 1977, and voluminous files and transcripts were received as exhibits. Both petitioner and respondent have had access to these exhibits and both have submitted briefs to the court. All of the files and transcripts, as well as the briefs, have been carefully considered and the various claims of the petitioner have been dealt with as follows.

## EXHAUSTION OF STATE JUDICIAL REMEDIES

■■■ It is settled federal law that a state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for a Writ of Habeas Corpus. 28 U.S.C.A. section 2254(b) (1971); Picard v. Connor, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). Of the eleven allegations of constitutional and jurisdictional invalidity made by the petitioner, some are clearly exhausted claims and some are unexhausted. The firm rule in the Eighth Circuit is that "when a petition contains both unexhausted claims and unrelated, exhausted claims, the district court should determine those issues which have been exhausted." Triplett v. Wyrick, 549 F.2d 57, 59 (8th Cir. 1977); Tyler v. Swenson, 483 F.2d 611, 614 (8th Cir. 1973). When, however, exhausted claims are closely intertwined with unexhausted claims, all may be returned to the state judicial system. Triplett v. Wyrick, supra; Johnson v. United States District Court for the District of Nebraska, 519 F.2d 738 (8th Cir. 1975); Blunt v. Wolff, 501 F.2d 1133 (8th Cir. 1974).

■ Petitioner's claims V, VI, VIII, IX and XI[2] are clearly unexhausted, as they

2. The factual bases for these claims follow. Claim V, suppression of exculpatory evidence, relates to the testimony of Connie Fernen Grablander that she was sure that it was Fred Zemina that was approaching her father's pickup as she drove away. (Directly contradicting petitioner's testimony that it was Bruce that first approached the pickup.) Counsel in this petition for a Writ of Habeas Corpus discovered an interview summary in the files of the Tripp County States Attorney that indicated that on the day after the incident Connie said she did not know which brother was driving which tractor, nor did she identify which brother approached her father's pickup, merely say-ing that "the man on the tractor and hay sled was getting off the tractor." Petitioner argues that this gives rise to an inference of perjury, or at least touches upon the credibility of the government witness.

Claim VI, the fourth amendment claim, is based on an allegation by the petitioner that the affidavit supporting the search warrant that resulted in the seizure of the rifle was based on conjecture and speculation and wholly failed to establish probable cause. Further, petitioner argues that the chronology of events on the night of November 8, 1969, indicate that testimony given by the sheriff at the time of the admission of the .22 rifle, both at the prelimi-

have never been presented to the South Dakota courts[3] either on petitioner's direct appeal or in his post conviction petition. S.D.C.L. section 23–52–15 (1967) provides as follows:

All grounds for relief available to a petitioner under this chapter must be raised in his original, supplemental or amended petition. Any grounds not so raised or finally adjudicated or knowingly and understandingly waived in the proceedings resulting in the conviction or sentence or in any other proceeding that the petitioner has taken to secure relief from his conviction, or sentence, may not be the basis for a subsequent petition, unless the court finds grounds for relief asserted which for reasonable causes were omitted or inadequately raised in the original, supplemental or amended petition.

Whether petitioner knowingly and understandingly waived the grounds that are the basis of claims V, VI, VIII, IX and XI, or whether there were reasonable grounds for their omission is for the state courts to determine in the first instance.[4] See McClain v. Swenson, 435 F.2d 327 (8th Cir. 1970).

Although the State has not challenged the exhaustion of the following grounds of the petition for the Writ of Habeas Corpus, the court has noted in its consideration of the state record that claims IV, VII and X[5]

---

nary hearing and at trial, was false and that had the court not been misled the rifle might have been suppressed.

Claim VIII relates to the allegations of the petitioner that due to unnecessary and inexcusable delays of a minimum of eighteen months in the preparation of his trial transcript, during which time he was denied bail, the state appellate process was rendered ineffective and petitioner was deprived of due process.

Claim IX was not elaborated upon, but there is some indication that petitioner feels that he was deprived of trial by a jury of his peers because he was not tried in the unorganized county of Todd, but rather in Tripp County, the organized county to which Todd County is attached. Todd County has a large Indian population and Tripp County does not. Petitioner apparently believes that he may have been the object of prejudice because he was married to an Indian.

Claim XI is self-explanatory.

3. A motion was made at the preliminary hearing regarding Claim VI (suppression of the rifle) but there was no objection made to the admission of the rifle into evidence at the trial, nor was the issue raised on appeal.

4. It is particularly appropriate to give the state courts an opportunity to determine petitioner's allegation VI, the search and seizure issue. The Supreme Court has recently held in Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), that federal habeas corpus review of the fourth amendment claims of state prisoners shall be limited to the issue of whether they were provided an opportunity for full and fair litigation of their claim. See also Hines v. Auger, 550 F.2d 1094 (8th Cir. 1977). Since state courts should be given an opportunity to correct constitutional violations and "if constitutional guarantees not otherwise litigated need correction, the state courts are the logical courts to hold the hearing and review their own cases" Smith v. Wolff, 506 F.2d 556, 558 (8th Cir. 1974), citing Barry v. Sigler, 373 F.2d 835 (8th Cir. 1967), it would seem correct to allow the state to give petitioner an opportunity to fully and fairly litigate his search and seizure claim before this court passes on it. See especially Cage v. Auger, 514 F.2d 1231, 1234 (8th Cir. 1975), where, concerning a remarkably similar fourth amendment claim, the court stated that if any evidentiary hearing was to be held, "comity would dictate that it be first held in the state court, thereby giving that system . . . its opportunity to rule."

5. The factual bases for these claims follow. Claim IV concerns a letter regarding the competency to testify of Bruce Zemina, the only eyewitness other than the petitioner. The letter was sent to the prosecution and stated that "This man is reliable as a witness." The same psychiatrist that wrote this letter shortly thereafter wrote a contradictory letter to the petitioner's trial counsel, stating that Bruce's "testimony would be unreliable." There is dispute as to whether the State made their letter available to defense counsel (the state court held in the post conviction proceedings that it had); and even if made available, whether receipt of the letter would have affected defense counsel's decision not to call Bruce as a witness.

Claim VII, regarding the ineffectiveness of trial counsel, is based on a number of grounds. Counsel's failure to move for a change of venue has been mentioned, supra note 2, as has his failure to pursue the issue of suppression of the rifle, supra note 3. Petitioner also asserts that his counsel made ineffective discovery efforts as regards Connie Grablander's testimony. See note 2, supra. Petitioner's main contention is that a significant conflict of interest arose because of his trial counsel's dual representa-

are possibly unexhausted. Although petitioner did not raise these claims in his direct appeal, all of these issues were raised in his state post conviction proceedings, and were determined adversely to him. S.D.C.L. section 23–52–16 (1971 amend.) provides for an appeal to the South Dakota Supreme Court upon issuance of a certificate of probable cause that an appealable issue exists. The state circuit court judge who presided at the post conviction proceedings expressed his willingness to issue such a certificate and petitioner was informed of his right to appeal. Because petitioner steadfastly refused to allow the lawyer who represented him at his post conviction proceedings to continue to represent him and had contacted another lawyer, whom, however, the circuit court judge refused to appoint as petitioner's counsel, petitioner allowed the six month deadline for filing the appeal to lapse. The South Dakota Supreme Court has consistently described the time limitations in its appeal statutes as being jurisdictional;[6] that is, the deadlines for filing are absolute. It is tempting, therefore, to find that petitioner has no available state remedies to pursue concerning claims IV, VII and X since "federal courts will not require pursual of state remedies where such a requirement is an exercise in futility." *Stead v. Link*, 540 F.2d 923, 925 (8th Cir. 1976) *citing Rice v. Wolff*, 513 F.2d 1280, 1290 (8th Cir. 1974) *rev'd on other grounds*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). *See also United States ex rel. Con-*

*don v. Erickson*, 459 F.2d 663 (8th Cir. 1972). The deadlines of this particular appeals statute (S.D.C.L. section 23–52–16), however, have never been ruled upon by the South Dakota Supreme Court. Additionally, it appears that the terms of S.D.C.L. section 23–52–15, *supra*, leave open some possibility that petitioner might be able to file a new post conviction petition in state court if claims IV, VII and X were "inadequately raised" for "reasonable causes". The South Dakota courts may decide not to allow petitioner to reopen these claims. This court, however, is not in the position at this time to say that there is *no* reason to believe that relief is available in the state courts. *See Cage v. Auger*, 514 F.2d 1231 (8th Cir. 1975).

■ Further, as regards claim VII concerning ineffective assistance of counsel, there are several matters raised in the petition before this court that were not raised when the similar claim was made in state court.[7] Since the petitioner must exhaust his state remedies "by presenting the same evidence and issues in the state trial and appellate courts" that he would in his federal proceeding, "federal relief will be denied until the state courts have been presented these new grounds." *Burke v. Erickson*, 343 F.Supp. 400, 402 (D.S.D.1972). *See also LeDent v. Wolff*, 460 F.2d 1001 (8th Cir. 1972), and *Buffalo Chief v. South Dakota*, 425 F.2d 271 (8th Cir. 1970).

---

tion of petitioner and his brother Bruce up until a month before the trial. Petitioner asserts the conflict adversely affected the attorney's trial performance in many ways, particularly in the matter of calling Bruce as a witness. Bruce allegedly had some unique knowledge and was, therefore, an essential witness.

Claim X is a purely legal issue, as it is undisputed that both the decedent and petitioner were white and that the incident occurred in Indian Country (as defined in 18 U.S.C.A. section 1151). The state court in the post conviction proceedings found state jurisdiction. Although, under the doctrine of exhaustion, petitioner may have to pursue this contention further in state court before this court can render a decision regarding its merits (see following text), it is observed that the state court has thus far rendered a perfectly correct interpreta-

tion of the federal law. *See* 18 U.S.C.A. section 1153; *United States v. McBratney*, 104 U.S. 621, 26 L.Ed. 869 (1881); S.D.C.L. section 23–9–8 (1967).

6. *See, e. g., Federal Land Bank of Omaha v. Le Mars Mutual Insurance Co. of Sioux Falls*, 65 S.D. 143, 272 N.W. 285 (1937); *State ex rel. Birdsall v. Kneeland*, 73 S.D. 73, 39 N.W.2d 281 (1949) (habeas corpus action).

7. See note 5, *supra*. The allegations regarding failure to move for a change of venue, failure to pursue the issue of suppression of the rifle and failure to make effective discovery attempts were not raised at all in the state courts. The conflict of interest ground was not raised in all of its complexity.

Finally, claim IV is intertwined, at least insofar as the legal issues regarding nondisclosure, with the undeniably unexhausted claim V. Claim VII is intertwined with the unexhausted claims V, VI and IX because the substance of the claim of ineffective assistance of counsel is based on trial counsel's failures in regard to those claims in earlier proceedings. See notes 2, 3 and 5, *supra*. This being the case, under the Eighth Circuit rule as expressed in *Triplett v. Wyrick, supra*, all of the intertwined claims should be left for possible state determination.

■ For the above reasons, and because "(w)hen a federal court is unable to determine unequivocally that an issue has been considered and ruled upon by the state courts, comity requires that the initial determination of the issue be made by the state courts", *Tyler v. Swenson*, 527 F.2d 876, 880 (8th Cir. 1976), *cert. den.* 425 U.S. 979, 96 S.Ct. 2185, 48 L.Ed.2d 805 (1976), claims IV, VII and X are deemed unexhausted at this time. Petitioner should exhaust any available state remedies as to these claims, as well as claims V, VI, VIII, IX and XI before it would be proper for them to be considered on their merits by this court. Federal courts are not unaware that "it becomes wearisome to state prisoners to be shuttled about through the complications of state court rules and state statutes", *Williams v. Missouri Department of Corrections*, 463 F.2d 993, 996 (8th Cir. 1972). "Nevertheless, we are constrained to abide by the doctrine of exhaustion of state remedies." *Id*. Of course, if these claims are exhausted in the future (should, for instance, the state courts deny petitioner's attempts at gaining post conviction relief on the grounds that he has waived his

claims by previously bypassing state procedural requirements), this court could consider them at that time. *Rinehart v. Brewer*, 561 F.2d 126, filed August 19, 1977 (8th Cir.); *Pruitt v. Hutto*, 550 F.2d 1093 (8th Cir. 1977), withdrawing part of 542 F.2d 458 (8th Cir. 1976). In such consideration, an independent determination under federal law (if the issue were raised) would be made regarding whether petitioner had waived his right to seek federal relief by a deliberate bypass of state procedure.[8] *Cain v. State of Missouri*, 518 F.2d 1180 (8th Cir. 1975); *Smith v. Wolff*, 506 F.2d 556 (8th Cir. 1974).

■ This court finds, however, that claims I, II and III clearly have been exhausted in state judicial proceedings. These claims were decided adversely to the petitioner upon the direct appeal of his conviction. *State v. Zemina, supra*. In *Orricer v. State*, 85 S.D. 293, 181 N.W.2d 461 (1970), the South Dakota Supreme Court declared that "when a defendant has taken an appeal from his conviction our post conviction statute cannot be used to secure a second review of issues finally decided on the appeal." The Eighth Circuit has held that when that is the state law, the petitioner need not pursue post conviction proceedings as to matters settled on direct appeal. *See Maggitt v. Wyrick*, 533 F.2d 383 (8th Cir. 1976), *cert. den.* 429 U.S. 898, 97 S.Ct. 264, 50 L.Ed.2d 183 (1976); *Edwards v. Swenson*, 429 F.2d 1291 (8th Cir. 1970), *cert. den.* 406 U.S. 909, 92 S.Ct. 1619, 31 L.Ed.2d 820 (1972). Since these three claims have been finally decided by the South Dakota Supreme Court and cannot be raised again in South Dakota, they will be considered on their merits.

8. The current Eighth Circuit standard for testing whether a habeas corpus petitioner has waived claims due to a deliberate bypass of state procedures is whether "knowingly and understandingly" the petitioner made a "considered choice" to waive his claims. *Rinehart v. Brewer*, 561 F.2d 126, filed August 19, 1977. This test is based on the decision in *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Recent Supreme Court developments indicate, however, that a new standard may be evolving, requiring cause for the failure to comply with state procedures and a showing of actual prejudice that resulted from the events that form the basis of petitioner's claim. *See Wainwright v. Sykes*, —— U.S. ——, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976).

CLAIM III:

## ALLEGED ERROR IN THE PROSECUTION'S FINAL ARGUMENT

The petitioner bases his claim that improper prosecutorial statements in the final argument deprived him of a fair trial and due process of law on the following comments made by the State:

1) You have got to live with this man. If he is a murderer, and we believe he is, then it is you that has to live with him, your neighbors, your kids. If he is a killer when will he kill again and this is the thing you have to decide. There is no question in my mind that you have such evidence to convict this man if you want to and nobody will ever do any thing if you acquit him except you have to live with him. . . .

2) Fred testified that he got no answer when he tried to call his lawyer. That is not the truth. Dan said there was a conversation, and I am sure that the conversation took place between Mr. Zemina and Rick Johnson's (the attorney's) wife. The fact that he called his lawyer is a telling sign. With the above facts in mind we have further proven our case in chief.

Petitioner argues that the first comment was improper because it contained an expression of the prosecution's belief in petitioner's guilt and suggested that the jury, their families and the community would not be safe if petitioner was acquitted. He argues that the second comment was improper because it implied that guilt should be inferred from the fact that petitioner exercised his constitutional right to the assistance of counsel.

The South Dakota Supreme Court found that there were no instances of prosecutorial argument rising to the level of error requiring reversal of petitioner's conviction. *State v. Zemina, supra.* Findings of fact by a state court are presumptively valid in federal habeas corpus proceedings. 28 U.S.C.A. section 2254(d) (1971). *See* discussion in *In re Parker,* 423 F.2d 1021 (8th Cir. 1970), *cert. den.* 398 U.S. 966, 90 S.Ct.

2182, 26 L.Ed.2d 551 (1970). "On the other hand, State adjudications of questions of law cannot, under the habeas corpus statute, be accepted as binding." *Brown v. Allen,* 344 U.S. 443, 506, 73 S.Ct. 397, 446, 97 L.Ed. 469 (1953), and "the mandate of the supremacy clause (is) that the ultimate decision of federal constitutional law remains in the federal courts." *In re Parker, supra* at 1027.

This court does not condone the statements made by the prosecution and notes that they are the type of comment that should be avoided. The question on a petition for a Writ of Habeas Corpus, however, is whether the comments, even if improper, rise to the level of constitutional violations. The United States Supreme Court has noted that improvisation takes place in prosecutorial arguments, and that while prosecutorial misconduct is not justified, still a distinction must be drawn "between ordinary trial error of a prosecutor and . . . egregious misconduct." *Donnelly v. DeChristoforo,* 416 U.S. 637, 647, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1974).

As regards the State's comment expressing belief in petitioner's guilt, "(t)he question of guilt or innocence rests with the jury and the prosecution has no authority to sit as a 'thirteenth juror'." *United States v. Splain,* 545 F.2d 1131, 1134 (8th Cir. 1976). For that reason, prosecutorial comments on culpability are "particularly objectionable and highly improper." *Id.* at 1135. This court notes, however, that in reading the comment made by the prosecution in the present case in its totality, it appears that the prosecutor was basing his statement on the evidence, not on personal knowledge. While "even if based on the evidence, statements by counsel of their conviction of the merits of their . . . cause should always be avoided . . ., (they) 'are not reversible error *per se*'." *United States v. Hager,* 505 F.2d 737, 740 (8th Cir. 1974). Each case must be examined on its own facts to see if the prosecution's comment was "unduly prejudicial" or "plainly unwarranted and clearly injuri-

ous." *United States v. Splain, supra* at 1135.

■ The evidence of guilt in Fred Zemina's case was not overwhelming, and "if the evidence of guilt is weak or tenuous, the existence of prejudice is more easily assumed." *Id.* Also, the trial court gave the jury no cautionary instruction to the effect that comment by attorneys was not evidence to be considered in its deliberations. If, therefore, this were a matter of a direct appeal from a conviction in federal court, there might be reversible error. The test in a habeas corpus proceeding, however, is more demanding, and generally "prejudicial remarks made by a prosecutor to the jury do not give rise to denial of due process . . ." *Maggitt v. Wyrick,* 533 F.2d 383, 387 (8th Cir. 1976), *cert. den.* 429 U.S. 898, 97 S.Ct. 264, 50 L.Ed.2d 183 (1976). Because of this rule; because no objection to the remark was made at trial and thus the trial court was never given a chance to decrease the impact of the statement by a cautionary admonition to the jury, *see United States v. Lawson,* 483 F.2d 535 (8th Cir. 1973), *cert. den.* 414 U.S. 1133, 94 S.Ct. 874, 38 L.Ed.2d 757 (1974); and because the statement was not "egregious misconduct", *see Donnelly v. DeChristoforo, supra,* the court finds that the prosecution's expressions of belief in petitioner's guilt were not constitutional error.

■ The same is true of the statements made concerning the safety of the community, which also were not objected to at the time they were made. The Eighth Circuit has specifically found that a plea to the jury "for the good of the community that you represent" to "rid ourselves of these burglars, sneak thieves in the night" would, even in the absence of an admonition of the trial court, be permissible argument. *United States v. Stead,* 422 F.2d 183, 184 (8th Cir. 1970), *cert. den.* 397 U.S. 1080, 90 S.Ct. 1534, 25 L.Ed.2d 816 (1970). The statement objected to by the petitioner in this case is very similar in its tenor, although more repetitive and expressed in perhaps more inflammatory terms. (Murderer and killer. But burglar and sneak thief are not partic-

ularly complimentary, either.) This court does not believe, however, that the difference is sufficient to amount to the denial of due process required for relief. *See Maggitt v. Wyrick, supra.*

■ The argument of the prosecution referring to petitioner's attempt to call his attorney creates a very close question as to whether his sixth amendment rights have been violated. There are no Supreme Court or Eighth Circuit cases dealing with this issue, but an analogy can be drawn to instances where the prosecution comments on an accused's failure to testify. In *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), it was held that the fifth amendment forbade comment by the prosecution on an accused's silence. To constitute impermissible comment, the prosecution's statement "must have been clearly intended or be of such a nature that the jury would naturally and necessarily view the comment as a reference to the defendant's failure to testify." *United States v. Thurmond,* 541 F.2d 774, 776 (8th Cir. 1976). Further, where the defense counsel stresses that a defendant has a right not to testify and the trial court instructs that no inference of guilt can be drawn from a defendant's failure to take the stand, the statement is not error. *United States v. Williams,* 503 F.2d 480 (8th Cir. 1974).

■ Drawing the analogy to the facts in this case, the State does appear to have intended the jury to draw an inference of guilt from petitioner's exercise of his sixth amendment right to counsel. The prosecution stated that petitioner's call to his lawyer was "a telling sign". Since the statement that followed immediately was that the State had "further proven" their case, the only thing that petitioner's call could have been a "telling sign" of was his guilt. Even keeping in mind the decision in *Maggitt v. Wyrick, supra,* wherein it was held that improper prosecutorial arguments do not amount to due process violations in habeas corpus cases, this court feels that improper argument can constitute a denial of the specific sixth amendment right to counsel. This is true in light of the reasons

given in *Griffin v. California, supra,* for holding that comment on a defendant's failure to testify was a fifth amendment violation. "(C)omment on the refusal to testify . . . is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly." 380 U.S. at 614, 85 S.Ct. at 1232. Similarly, comment on a defendant's exercise of his right to counsel could make that exercise costly, especially where it was never explained to the jury that the defendant had such a right, and a cautionary instruction that no inference of guilt should be drawn from exercise of that right was not given. The prosecution should not be allowed to imply that only guilty people contact their attorneys. *See United States ex rel. Macon v. Yeager,* 476 F.2d 613, 616–17 (3rd Cir. 1973), *cert. den.* 414 U.S. 855, 94 S.Ct. 154, 38 L.Ed.2d 104 (1973), wherein the court stated:

> The prosecutor's comment concerning [defendant's] consultation with counsel the day after the shooting incident would appear to have been directed to, and may have had the effect of, raising in the jurors' minds the inference that petitioner was, or at least believed himself to be, guilty. Such an inference might certain-

ly tend to cause the jury to disbelieve Macon's version of the story. Under these circumstances, the possibility of prejudicial impact is present and we, therefore, are unable to conclude that the prosecutor's comment was "harmless beyond a reasonable doubt." [9]

Similarly, it cannot be said that the prosecutor's comment in the case under consideration in this petition for a Writ of Habeas Corpus was "harmless beyond a reasonable doubt."

## CLAIMS I AND II:

## ALLEGED ERRORS IN THE INSTRUCTIONS

The petitioner alleges that he was deprived of due process and a jury trial because the trial court refused his requested instructions on excusable homicide, justifiable homicide, self-defense and defense of a third party. The South Dakota Supreme Court found that under state law,[10] matters of excuse and justification were affirmative defenses and that there was no support in the evidence for giving such instructions. *State v. Zemina, supra.* The petitioner also protests the aiding and abetting instructions given by the court,[11] alleging that the

---

**9.** This standard was set in *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967): "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."

**10.** The applicable state statutes regarding excuse and justification follow.

S.D.C.L. section 22–16–16:

> Homicide is manslaughter in the first degree when perpetrated without a design to effect death and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide.

S.D.C.L. section 22–16–35:

> Homicide is [excusable] when committed by any person in the lawful defense of such person, or of his or her husband, wife, parent, child, master, mistress, or servant when there is reasonable ground to apprehend a design to commit a felony, or to do some great personal injury, and imminent danger of such design being accomplished.

**11.** Instruction 23

Under our law the distinction between an accessory before the fact and a principal, in a case of felony such as the offense charged, is abrogated, and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense or aid and abet in its commission, though not present, are considered as principals and may be prosecuted, tried, and punished as principals. No additional facts need be shown against such an accessory before the fact than are required against his principal and such an accessory may be prosecuted, tried and punished even though the principal be neither prosecuted nor tried.

A person aids and abets the commission of a crime if he knowingly and with criminal intent aids, promotes, encourages or instigates by act or advice, or by act and advice (sic), the commission of a crime such as charged although not present and not directly committing the act constituting the offense is an accessory before the fact and chareable (sic) as a principal.

So in this case if you should find that one person was a principal and the other person was an accessory before the fact to the com-

instructions should have charged that it must be proven beyond a reasonable doubt that the principal (*i. e.* Bruce Zemina) committed an offense. The instructions were found to be adequate and proper statements of South Dakota law.[12] *Id.*

■ As noted earlier, under 28 U.S.C.A. section 2254(d) (1971), state findings of fact are presumptively valid in habeas corpus proceedings, but state adjudications of law are not binding, for the state court "may have misconceived a federal constitutional right." *Brown v. Allen,* 344 U.S. 443, 508, 73 S.Ct. 397, 447, 97 L.Ed. 469 (1953). A federal court may defer to a state court's finding of fact, yet "the conclusions drawn from the facts may differ from the state court's conclusion." *Wolfs v. Britton,* 509 F.2d 304, 308 (8th Cir. 1975), citing *West v. Louisiana,* 478 F.2d 1026, 1032 (5th Cir. 1973).

■ Feeling that the state court is the best interpreter of its own substantive law, this court does not intend to substitute its interpretation for the state supreme court's

conclusions that the instructions given adequately stated the law on aiding and abetting or that in South Dakota, questions of excusable or justifiable homicide are matters of defense.[13] That being the case, giving the instructions on aiding and abetting was not error. The issue that this court will address is whether, once the aiding and abetting instructions were given, it was constitutionally mandated that instructions presenting petitioner's various defense theories be given.

■ It is well settled that a defendant is entitled to an instruction on his theory of defense if there is evidence to support it and a proper request is made. *United States v. Brown,* 540 F.2d 364 (8th Cir. 1976); *United States v. Nance,* 502 F.2d 615 (8th Cir. 1974), cert. den. 420 U.S. 926, 95 S.Ct. 1123, 43 L.Ed.2d 396 (1975); *Raftis v. United States,* 364 F.2d 948 (8th Cir. 1966). The state courts found that there was no evidence to support instructions on any of petitioner's defense theories. This, of course, is a conclusion of law, *i. e.,* determining the sufficiency of the evidence.

mission of the offense charged, both would be guilty thereof.

Instruction 24

The mere presence of a person at the commission of the crime does not make him guilty of the crime unless he participates in the crime or aids, abets, or assists another in the commission of the crime.

In order to aid and abet another to commit a crime it is necessary that the accused willfully associate himself in some way with the criminal ventuer (sic), and willfully participate in it as he would in something he wishes to bring about; that is to say that he willfully seek by some act or commission of his to make the criminal venture succeed.

12. The applicable state statutes regarding aiding and abetting follow.
S.D.C.L. section 22–3–3:

All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense or aid and abet in its commission, though not present, are principals.
S.D.C.L. section 23–10–3:

The distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abrogated, and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense or aid and abet in its commission, though not

present, must be prosecuted, tried, and punished as principals.
S.D.C.L. section 23–10–4:

No additional facts need be alleged in any indictment or information against an accessory before the fact than are required in an indictment against his principal.
S.D.C.L. section 23–10–5:

An accessory to the commission of a felony may be prosecuted, tried, and punished, though the principal be neither prosecuted nor tried, and though the principal may have been acquitted.

13. The constitutionality of the South Dakota Supreme Court's interpretation of S.D.C.L. section 22–16–16 in *State v. Zemina, supra,* and *State v. Johnson,* 81 S.D. 600, 139 N.W.2d 232 (1965), to the effect that excuse and justification are matters of defense; that is, the defendant must prove their presence rather than the State their absence, has not been challenged in this proceeding. The argument has revolved strictly around the issue whether instructions should have been given. This court notes, however, that in light of *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), the South Dakota Supreme Court's interpretation of the law may be of questionable constitutional validity.

Even giving deference to the rulings of a trial court, this court cannot be bound by that determination. *Brown v. Allen, supra.* It is true that petitioner never attempted to present evidence to support theories that he personally shot the decedent in defense of himself, in defense of his brother, or even by accident. Petitioner totally denied that he shot Fernen. The ruling of the state courts that there was no evidence to support instructions on excuse or justification must, however, be considered in light of the aiding and abetting instructions that were given. Since the jury was instructed that petitioner could be convicted as a principal if he knowingly and *with criminal intent* aided, promoted, encouraged or instigated the commission of a crime, although not directly committing the act constituting the offense,[14] petitioner's requested instructions presented two possible theories of defense. One is that although he admittedly participated in the events of November 8, 1968, he had no *criminal intent,* as he was acting in self-defense or in defense of his brother. The second is that the acts that he participated in did not constitute a *crime,*[15] because both his and his brother's acts were done in self-defense, and that when the shot that killed Fernen occurred, it was in self-defense or by accident. Several courts have ruled that a defendant has a right to have his theory presented in the instructions "(e)ven when the supporting evidence is weak or of doubtful credibility." *See, e. g., United States v. Garner,* 529 F.2d 962, 970 (6th Cir. 1976), *cert. den.* 426 U.S. 922, 96 S.Ct. 2630, 49 L.Ed.2d 376 (1976); *United States v. Swallow,* 511 F.2d 514 (10th Cir.

1975). But the petitioner in this case is not particularly in need of such a protective ruling. When the totality of the evidence supporting excuse or justification theories is viewed, along with the permissible inferences that could be drawn from the evidence, petitioner's theories are not weak.[16] Fernen was shot with his own rifle. Fernen had a history of assaulting the petitioner, whereas petitioner had a history of not resorting to self-help, but rather of reporting his grievances to the authorities. Fernen was shown to have consumed alcohol on the afternoon in question, and had been upset with the Zeminas only minutes before his death. Petitioner testified that when he arrived at the pickup Fernen was choking his brother and said, "I shot Bruce and I am going to get you." This is evidence, even if given by petitioner; and the fact that Bruce was shot (not to speak of the fact that petitioner received abrasions, a broken nose and two fractured ribs) was corroborated by medical testimony. Admittedly, the evidence of justification or excuse was not uncontroverted. Connie Grablander testified that Fred, not Bruce, was the first to approach the pickup.[17] Fernen was severely beaten, whereas petitioner only admitted seeing him struck with the rifle one time. Petitioner at one time mentioned the presence of another gun, but one was never found. Fernen was found outside the pickup, a fact for which the petitioner did not account. He also never accounted for the mysteries of the presence of the scoop shovel in the pickup and the finding of the keys some 25 feet away.[18] The fact that the

---

14. The full text of the aiding and abetting instructions is found at note 11, *supra.*

15. It should be noted that this court is not reneging on its previous decision not to challenge the state court ruling that it was unnecessary for the state to *prove* that Bruce Zemina committed a crime before petitioner could be convicted for aiding and abetting. The issue addressed here is whether petitioner should have been allowed to raise the *defense* that there was no crime committed.

16. In the summary of the evidence that follows in the text, the court does not even attempt to exhaustively review all of the evidence support-

ing a theory of excuse or justification (or controverting it). The record of a four day trial is not easily condensed. The instances mentioned merely indicate that such evidence existed.

17. Potential problems with this testimony are discussed in note 2, *supra.*

18. There are indications in the files reviewed by the court in this habeas corpus proceeding that Bruce Zemina, the petitioner's brother, may well have the explanations to some of these mysteries. It is apparently doubtful, however, whether he will ever be competent to testify.

theories of excusable or justifiable homicide could be disputed, however, is not the point. Nor is the fact that the trial court may have disbelieved petitioner's testimony, or that this court may believe or disbelieve his testimony. The point is that the issues of credibility and the weight to be given the evidence were jury questions. "It is not for the trial judge to assess the credibility of witnesses, to resolve conflicts in testimony or to weigh the evidence, as these are jury functions." *United States v. Beran,* 546 F.2d 1316, 1320 n. 5 (8th Cir. 1976), *cert. den.* 430 U.S. 916, 97 S.Ct. 1330, 51 L.Ed.2d 595 (1977).

That we have found that there was evidence supporting instructions on excusable and justifiable homicide, however, is an insufficient ground to grant relief in this petition. We must find that refusing such instructions was constitutional error.

> (O)rdinarily habeas corpus being a collateral attack is not considered to be a proper remedy for correcting errors in trial procedure. . . . It is only where the trial errors or irregularities infringe upon a specific constitutional protection or are so prejudicial as to amount to a denial of due process that a justiciable federal issue is presented in a habeas corpus proceeding. *Atwell v. State of Arkansas,* 426 F.2d 912, 915 (8th Cir. 1970), *cited in, e. g., Ball v. Wyrick,* 547 F.2d 78 (8th Cir. 1977); *Hogan v. State of Nebraska,* 535 F.2d 458 (8th Cir. 1976); *Maggitt v. Wyrick,* 533 F.2d 383 (8th Cir. 1976).

"Claimed errors in instructions to the jury are generally not of such constitutional magnitude and do not state a claim for habeas corpus relief." *DeBerry v. Wolff,* 513 F.2d 1336, 1338 (8th Cir. 1975). This does not mean, however, that error in giving instructions can never rise to constitutional dimensions. *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). *See also Cool v. United States,* 409 U.S. 100, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972). The Supreme Court has stated that the test is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp*

*v. Naughten, supra,* 414 U.S. at 147, 94 S.Ct. at 400. The test in this case could be stated as whether the *absence* of instructions so infected the entire trial. Additional standards can be garnered from *Thwing v. State of South Dakota,* 470 F.2d 351 (8th Cir. 1972), *cert. den.* 411 U.S. 937, 93 S.Ct. 1917, 36 L.Ed.2d 399 (1973), where the failure to give lesser-included offense instructions was held not to be constitutional error because the instructions were never requested, there was no relationship between the unrequested instructions and the instructions that were given, and no objection was made at the trial to the instructions as given.

In this case, instructions on excuse and justification were fervently requested. The relationship between those requested instructions and the aiding and abetting instructions has already been discussed. Furthermore, there was vehement objection to the instructions as given. The question remaining is how badly the failure to give the instructions on excusable and justifiable homicide "infected" the constitutional complexion of the trial.

Aid in analysis can be drawn from the case of *Strauss v. United States,* 376 F.2d 416, 419 (5th Cir. 1967), where the court stated:

> The jury is the fact-finder. If the trial judge evaluates or screens the evidence supporting a proposed defense, and upon such evaluation declines to charge on that defense he dilutes the defendant's jury trial by removing the issue from the jury's consideration. In effect, the trial judge directs a verdict on that issue against the defendant. This is impermissible.

In the case under consideration in this habeas corpus petition, the judge screened the evidence relating to excuse and justification and apparently determined that the jury did not need to consider it. In giving an instruction that petitioner could be convicted for merely participating in a crime with criminal intent without allowing the jury to consider evidence to support theories that there was no crime or that peti-

tioner had no criminal intent, the judge, in effect, directed a guilty verdict, for petitioner had already admitted participation.[19] The prejudicial impact of such a course of action cannot be questioned. The United States Constitution guarantees all criminal defendants a trial by an impartial jury. What Fred Zemina received was, in effect, a trial by the judge.

In addition to the right to a jury trial, the due process clause requires the prosecution to prove a defendant's guilt beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Petitioner was not allowed to raise a reasonable doubt in the jurors' minds. Finally, we must not lose sight of the fact that:

> "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Stump v. Bennett,* 398 F.2d 111, 117 (8th Cir. 1968), *cert. den.* 393 U.S. 1001, 89 S.Ct. 483, 21 L.Ed.2d 466 (1968) (finding instruction shifting to defendant burden of proving his alibi defense violative of due process of law) *citing Coffin v. United States,* 156 U.S. 432, 453, 15 S.Ct. 394, 39 L.Ed. 481 (1895).

For all of these reasons, this court finds that the refusal of the state trial court to render any instructions on excusable homicide, justifiable homicide, self-defense or defense of a third person was error of constitutional magnitude, depriving petitioner of his fundamental rights of trial by jury and due process of law. The court further finds that such constitutional error clearly was not "harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), *reh. den.* 386 U.S. 987, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Therefore, and also because of the reasons expressed in the discussion of prosecutorial error, it is ordered that the petition for a writ of habeas corpus is hereby granted, and it is hereby ordered that the said Fred R. Zemina shall be released unless retried within ninety days from the date of this memorandum decision or within ninety days from the mandate received from the Eighth Circuit Court of Appeals in the event of an appeal by the State of South Dakota resulting in an affirmance of this decision.

Remember, he said . . . "He was laying on the seat and I struck out with the fist. I didn't hit him very hard, not hard at all but hard enough so Bruce got loose." He is participating. That is part of the crime. That is aiding and abetting.

---

**19.** The prosecution was not slow to act on the gift thus given them:

> If Bruce was the sole perpetrator of the crime that is . . . irrelevant because he, Fred, sat on that stand and was under oath and testified that he hit Kenneth Fernen twice.