UNITED STATES of America,
Appellee,

v.

Jules W. WERTHEIMER, Defendant-Appellant.

No. 104, Docket 33184.

United States Court of Appeals,
Second Circuit.

Argued Sept. 15, 1970.

Decided Nov. 25, 1970.

David G. Trager, Asst. U. S. Atty. (Edward R. Neaher, U. S. Atty., E.D.N.Y., on the brief), for appellee.

H. Elliott Wales, New York City, for defendant-appellant.

Before FRIENDLY, SMITH and HAYS, Circuit Judges.

HAYS, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Eastern District of New York convicting appellant on all counts of a five-count indictment, founded upon 18 U.S.C. § 287 (1964). The indictment charged that in 1966 Wertheimer submitted five fraudulent claims for payment to the Defense Supply Agency of the United States for goods which he had not in fact shipped. Appellant was sentenced, pursuant to 18 U.S.C. § 3651 (1964), to serve six months imprisonment on counts 1 and 2, the sentences on these counts to run concurrently, and three months on counts 3, 4, and 5, the sentences on these counts to run concurrently, but consecutively with the six-month jail sentences imposed on counts 1 and 2. A five-year period of probation is to follow the completion of the period of imprisonment.

## FACTS

In 1965, Mercury Chemical Corp. of Brooklyn, New York and the Department of Defense Supply Agency entered into two contracts—one for the sale of a corrosion inhibitor and the other for the sale of a boiler compound. Both were requirements contracts which did not impose any obligation on the part of the government to purchase any specific quantity of material. The contracts, however, did specify the composition of the material and its unit price. Jules Wertheimer, the appellant, signed these contracts as President of Mercury Chemical Corp.

On five occasions in January, March and June, 1966, the Defense Department Supply Agency did order material from Mercury Chemical by sending the requisite delivery orders. Subsequently, on five occasions in January, March and June, 1966, Mercury Chemical in turn sent invoices totalling approximately $25,000 to the Defense Supply Agency. On each invoice the appellant Wertheimer, as President of Mercury Chemical, signed a certificate stating that the material had in fact been shipped. Actually, the material had not been shipped on the dates stated on the invoices but was delivered several months later.

The government introduced testimony to show that in 1966 there were two methods by which payment was made by the Department of Defense Supply Agency. Normally, before the agency would issue a voucher for payment both an invoice and a government receiving form were required. The latter form, designated a DD250, was completed by a government official either at the place of origin or place of destination or both, and it indicated that the goods had been received and had been inspected by a government official. In response to numerous complaints of delay, however, the government instituted a "fast-pay" procedure. In lieu of a government receiving form, the "fast-pay" procedure required a certification that the goods had been shipped. The form of certification was as follows:

"I hereby certify that I did ship on (date) via the (method of shipment) or deliver on (date) in accordance with shipping instruction issued by the ordering officer, supplies in the quantities shown hereon and that such supplies are in the quantity and of the quality designated by the cited purchase order. This statement is furnished to support payment of invoice."

"Fast-Pay" was to be used only for orders of less than $2500.

The invoices submitted by appellant to the Government all contained the above certification required for "fast payment." Except for the first one sent, all exceeded $2500, and therefore, payment should not have been made. The government official asked to pay the invoices under the "fast-pay" procedure was unaware at that time of the $2500 limitation and authorized payment.[1]

The appellant's defense was that he had signed the invoices in blank and that the information had been filled in by his secretary in his absence. Also, he testified that he had not considered the invoices as being a claim for "fast payment" because the amounts either exceeded $2500 or a DD250 receiving form had not yet been submitted. The jury verdict resolved this question of credibility against the defendant, and the appellant makes no claim that the finding is unsupported by the record.

## I.

■ Appellant was found guilty on all five counts of the indictment. The trial Court imposed concurrent terms of six months on the first two counts to be followed by concurrent terms of three months on each of the last three counts. The total length of incarceration is therefore nine months. Appellant contends

---

1. The government's mistake of course in no way absolves the appellant of felony certifying the shipments.

that imposition of a jail sentence in excess of six months is not authorized by the terms and limitations of 18 U.S.C. § 3651 (1964). We do not agree.

The enactment of the 1958 amendment of § 3651 was for the purpose of allowing judges to grant a short sentence (6 months or less) followed by probation on a one count indictment. Prior to the amendment, the practice had been to sentence on one count and place defendant on probation on another count. Since this procedure was not possible where there was a one count indictment, § 3651 was amended to grant the judge this discretion. S.Rep.No.2135, 85th Cong., 2d Sess. (1958).

There is no evidence, however, that Congress intended to abolish the long sanctioned practice of imposing consecutive sentences by enacting this amendment. United States v. Solomon, 70 F. 2d 834 (2d Cir. 1934); Swepston v. United States, 289 F.2d 166, 168–169 (8th Cir. 1961); Sherman v. United States, 241 F.2d 329, 336–337 (9th Cir. 1957); Lipscomb v. United States, 226 F.2d 812, 816 (8th Cir. 1955); Ellerbrake v. King, 116 F.2d 168, 170 (8th Cir. 1940). In addition, there is nothing in the language of § 3651 which precludes a judge from imposing consecutive sentences that total more than six months. We hold that consecutive sentences are not inhibited under § 3651.

## II.

██ Appellant argues that it was error for the trial court to rule as a matter of law that each invoice in question was a "claim" within the meaning of 18 U.S.C. § 287 (1964), which provides as follows:

"Whoever makes or presents * * * any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious or fraudulent, shall be [fined, etc.]."

The evidence was overwhelming that the invoice was a claim. The invoices, which appellant submitted, were directed to the "Finance and Account Officer." Each contained language describing the invoice as a "bill" and stated that payment "has not been received." The certification on the invoice also states that it is being furnished to support payment of the invoice. All the invoices give the terms of payment as one per cent off, if payment is made within 20 days. These documents were styled by the appellant himself as invoices. Most damaging was the uncontradicted evidence that the appellant had already received and kept the payment on the first two invoices by the time he presented the third and fourth invoices in March. It is obvious that appellant must have known that the government was paying without a DD250 receiving form.

The court was therefore entirely correct in charging that an "invoice submitted for payment is a claim within the meaning of the statute."

## III.

██ Appellant also contends that the trial court erred in refusing to allow the defense to introduce evidence showing that the ordered materials were eventually delivered. Under the circumstances here we agree. Although there may technically have been no error since the indictment charged false certification on the invoice for payment rather than fraud in non-compliance, the government took unfair advantage of the appellant by deliberately giving the jury the impression that the government had paid approximately $25,000.00 to the appellant for materials never delivered and was cheated out of its moneys. The government, after having been allowed to show payment, should not have objected to the defendant's showing delivery. The judge's charge did not adequately counter the resulting prejudice to the defendant.

The unfair advantage in presentation of evidence during the trial was compounded by the government's summation which repeatedly stressed the proof of payment in such a way as to give an impression of financial loss to the government. First, the assistant United States attorney said, "[T]he Government paid the amount of money involved here." This was followed by "We are not talking about a small amount of money. We are talking about twenty-five thousand some odd dollars." Then he repeated again that "there is no question that payment was, in fact, made on each one of these invoices." Finally, the prosecutor stated, "He is on trial for shipments that were not made and on which he was paid." Appellant's objection to this line of argument was overruled.

Although this prejudicial impression in the summation might have been corrected by a sufficient charge from the judge, the court's instruction merely continued the mystery of whether the government was defrauded as to the $25,000.00. The court charged: "It is not charged in the indictment that the United States or any Department or Agency thereof was actually deceived by the claims alleged or that the government in any way suffered monetary loss because of them." It then added, "whether or not the government was deceived, or suffered monetary loss because of the claim alleged in the indictment is immaterial." This charge did not adequately remove the impression left with the jury by the prosecutor that the shipments had never been made. The trial judge should have told the jury that the goods had in fact been delivered and thus removed the entire issue of monetary loss from the case. The jury then would properly have been able to direct its attention to the main issue of fact, namely whether the appellant Wertheimer certified falsely on the days in question that he had made delivery and not whether the government ultimately suffered a monetary loss.

Reversed and remanded for a new trial.