UNITED STATES of America, Appellee,

v.

JOHN BERNARD INDUSTRIES, INC., Appellant.

UNITED STATES of America, Appellee,

v.

Lonna G. MUNSCH, Appellant.

UNITED STATES of America, Appellee,

v.

Barbara HELGREN, Appellant.

UNITED STATES of America, Appellee,

v.

Jerome B. NEWTON, Appellant.

Nos. 78–1343, 78–1347, 78–1348 and 78–1349.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1978.

Decided Jan. 15, 1979.

Wallace D. Berning of Anderson, Tossett, Berning & Dobrovolny, Minot, N. D., for appellant, John Bernard Industries, Inc.

Ella Van Berkom, Minot, N. D., for appellants, Munsch & Helgren.

Richard B. Thomas, Minot, N. D., for appellant, Newton.

James R. Britton, U. S. Atty., and Lynn E. Crooks, Asst. U. S. Atty., Fargo, N. D., and James S. Hill, Asst. U. S. Atty., Bismarck, N. D., filed a consolidated appellee's brief in cases nos. 78–1343 and 78–1349, and a consolidated appellee's brief in cases nos. 78–1347 and 78–1348.

Before GIBSON, Chief Judge, and LAY and HEANEY, Circuit Judges.

GIBSON, Chief Judge.

In these cases, John Bernard Industries, Inc., Jerome B. Newton, Lonna G. Munsch, and Barbara Helgren appeal from their convictions for making false claims against the United States in violation of 18 U.S.C. § 287 (1976), and conspiracy to commit fraud against the United States in violation of 18 U.S.C. § 286 (1976). Each defendant was convicted of more than one count of the multiple-count indictment. On appeal, it is contended that the District Court[1] erred in a variety of ways. After carefully considering the arguments of the parties, we affirm the convictions in all respects.[2]

These criminal charges arose from the civilian operation of a supply store at the United States Air Force Base at Minot, North Dakota. Simmons Construction Company of San Diego, California, was the contractor authorized to operate the supply store at Minot. The sole owner was Patrick E. Simmons. Jerome B. Newton was the vice-president and operations manager of Simmons Construction Company. He had authority to hire and fire other employees and had authority to carry out the dealings the company had with the Government. Lonna Munsch was store manager of the supply store at Minot. Barbara Helgren was a secretary and later a buyer for the operation.

The contract between Simmons Construction Company and the Government provided three methods of pricing items required by Air Force personnel. A specific price was negotiated prior to award of the contract for some items (pre-priced items). Other items were found on a price list or lists approved by the Government (price-listed items). If an item was found on those lists, the contractor was to use the lowest price available. Finally, there were items which were not on the price list (non-price-list items). In these cases the contractor was authorized to purchase the item anywhere. However, the contractor was essentially limited to recovering from the Government the amount he paid for it, plus a set fee for procuring the item. In other words, the contractor was not to make a profit on these items but was to receive a service fee for his expense and activity in obtaining the desired item. Section J12(b) of the contract further provided:

> Sales or transfer of items between a parent company and/or subsidiaries or affiliates in which the [contractor] or principals of the company has a financial interest which increases the price to the government beyond the price which the [contractor] would normally expect to pay if the item was purchased elsewhere in the market is prohibited.

This provision was the basis for the Government's prosecution of John Bernard Industries, Inc. It was housed in the same building occupied by Simmons Construction Company in San Diego. Patrick E. Simmons was its president and was a member of the Board of Directors authorized to do business on behalf of the corporation. Simmons was the majority stockholder of John Bernard Industries. Testimony at trial indicated that during 1976 John Bernard In-

1. The Honorable Bruce M. Van Sickle, United States District Judge for the District of North Dakota.

2. John Bernard Industries, Inc. was fined $5,000. Munsch, Helgren, and Newton were fined a total of $1,000, $800, and $1,200 respectively, and each was placed on probation for twenty-four months. A co-defendant, Patrick E. Simmons, who owned Simmons Construction Company as the sole proprietor and was also majority stockholder and president of John Bernard Industries, was severed before trial because of illness. He subsequently pled nolo contendere and was fined $10,000.

dustries[3] did ninety percent of its business with Simmons Construction Company.

The supply store functioned in a fairly simple manner. When the Air Force desired an item, a form 1445 would be filled out by Air Force personnel. This would be submitted to the store. If the item were on the shelf it would immediately be turned over to Air Force personnel, and a sales slip would be prepared for submission to the Government for payment. If the item were not in the warehouse, the store would place an order with their supplier and upon receipt of the item it would be delivered to the Government and a sales slip would be prepared and submitted. Typically, the sales slip would be signed by Air Force personnel.

In general terms, fraud entered into the arrangement through various practices of the defendants. In some cases items were routed through a series of related companies with the result that the Government paid a higher price than permitted under the basic contract. In other cases, store personnel would substitute products of a different quality or price, or would submit a false price to the Government for payment. There was also evidence that in some cases Air Force personnel and employees of Simmons Construction Company obtained for their own use items which were in fact paid for by the Government. In sum, the factual outline presented by the evidence is a scenario of a group of people casually and deliberately plundering the Government for their own benefit and the benefit of their employer, Patrick Simmons, by creating false sales, overcharging, making unauthorized substitution of items, and using inflated price lists.

■ The defendants raise numerous allegations of error which we will consider separately. They assert that the trial court erred in allowing the Government to present witnesses whose names were not included in any notice to the defendants prior to the trial. It is clear at the outset that under general legal principles the Government had no obligation to supply such a list. *United States v. Larson,* 555 F.2d 673, 676 (8th Cir. 1977); *United States v. Brown,* 535 F.2d 424, 429 (8th Cir. 1976); *United States v. Harflinger,* 436 F.2d 928, 936 (8th Cir. 1970), *cert. denied,* 402 U.S. 973, 91 S.Ct. 1660, 29 L.Ed.2d 137 (1971). However, in this case the District Court granted an *Order on Omnibus Pre-trial Conference.* In that order, the defendants were arguably granted discovery of the names of the Government's witnesses and their statements, and any additional information coming into the Government's possession between the conference and trial. This order was completed by filling in blanks and circling items on a standardized form apparently used by the District Court in many cases. The reason for the District Court's order is not clear. It may have been simply to facilitate conduct of the trial in a smooth and orderly fashion. In any event, the Government was permitted to call as witnesses certain individuals who had not been identified to the defendants as witnesses prior to trial. Some of these individuals were called as substitutes for other witnesses who were unavailable at trial. In these cases the testimony presented was of a routine nature in the introduction of certain documentary evidence. Other witnesses were called whom the Government asserts it did not determine were necessary witnesses until the trial was in process, and at that time notice was given to the defendants. The District Court permitted the defendants to take time prior to testimony of such undisclosed witnesses to prepare for their testimony and cross-examination.

■ The District Court's order was clearly within the area of permissible discretion of a court in controlling litigation before it. However, we reject the defendants' position that the Government was estopped from

---

**3.** The reason advanced by the corporate defendant for the use of John Bernard Industries in procuring supplies was that a distributor could obtain a better price from the supplier than could an ultimate user such as Simmons Construction Company.

introducing any witnesses not disclosed on a formal list prior to trial. In our view, the District Court had discretion to order the Government to disclose the witnesses it expected to call. *United States v. Jackson,* 508 F.2d 1001, 1006 (7th Cir. 1975); *United States v. Harflinger,* 436 F.2d 928, 936 (8th Cir. 1970), *cert. denied,* 402 U.S. 973, 91 S.Ct. 1660, 29 L.Ed.2d 137 (1971). However, the District Court also had discretion to modify that order or to interpret it in any manner consistent with the ends of justice in the actual conduct of the trial.

■ The appellants have included in their brief conclusory allegations of prejudice resulting from the Government's failure to supply a witness list. We reject the contention in the brief of John Bernard Industries, Inc. that the fact that the witnesses called presented evidence prejudicial to the defendants has any bearing on this question. The defendants have not specified any instance in which they were misled or surprised to their detriment by the witnesses actually called. Nor do we find merit in the complaint that the District Court's attempt to remedy the situation by permitting the defendants to have time in which to examine witnesses prior to their being called was inadequate or harmful through the supposed impact on the jury of such a delay. There is no suggestion that the Government deliberately refused to abide by the pretrial order in order to obtain some advantage at trial. In short, we are satisfied that the defendants were not prejudiced by the procedure followed by the District Court. Absent a clear showing of such prejudice, the matter of disclosure of witness lists is within the discretion of the District Court.

■ The second issue raised by the defendants is that certain testimony of FBI Special Agent Butcher and questions put to Mr. Butcher by the Assistant United States Attorney were improper and prejudicial to the defendants. They contend that the trial court erred in refusing to grant a mistrial. The first challenged episode occurred during the direct examination of Agent Butcher. At that time the Assistant United States Attorney was questioning Mr. Butcher and the following occurred:

Q. (Mr. Hill continuing) Now, Mr. Butcher, we talked about probably a dozen transactions here. Now, were these the only sales transactions that you reviewed during your investigation which you—well, suspected there was something wrong with?

A. No, they were not. I reviewed several hundred—

The defendants then objected and the trial judge sustained the objection, stating that he felt that there was a problem of prejudice involved in the question and answer. The District Court also granted a motion to strike the answer of Mr. Butcher and directed the jury to disregard it. The District Court refused to grant a mistrial.

The second significant part of the testimony occurred during the cross-examination of Agent Butcher by counsel for John Bernard Industries. The following occurred:

Q. Now you say you became involved in this case on July 16 of 76?

A. Yes.

Q. And you've been working on the case ever since?

A. That's correct; yes.

Q. And this is the product here of that year-and-a-half of effort; right?

A. Well, this is part of that product that we brought to this trial, yes.

Q. These are the important things that you found in your investigation over that period. Now, you testified that you went to the building where the offices of J.B.I. and California Paint were located.

A. Yes, I did.

None of the defendants objected to this line of questioning on cross-examination. Nor did the Government object. Thereafter, on re-direct, the Government asked the following question:

Q. All right. Now I've checked for the Court Reporter for certain language and I'd like you to listen to this language. Mr. Scherer asked the question and, quote, this is the product of that year-

and-a-half of effort; right?—unquote, and you answered, quote, well, this is part of that product that we have brought to this trial, yes. Unquote. And then Mr. Scherer said, quote, those are the important things that you found in your investigation over that period, unquote, and Mr. Butcher, I'd like you to answer the last question Mr. Scherer asked you because you didn't have a chance to answer.

Counsel for the defendants then objected. The District Court ultimately sustained the objection and agreed with the United States that in closing argument counsel for the defendants would not be permitted to argue that the overt acts cited in the indictment were the only improprieties found during the year-and-a-half investigation.

The Government now contends that the District Court erred in refusing to permit it to question Agent Butcher regarding the other wrongful acts. They cite Rule 404(b) of the Federal Rules of Evidence and various decisions of this court including *United States v. Fuel,* 583 F.2d 978, 988–89 (8th Cir. 1978), and *United States v. Adcock,* 558 F.2d 397, 401 (8th Cir.), *cert. denied,* 434 U.S. 921, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977). The Government also contends that some of the defendants failed to join in the motion for a mistrial.

Although there may be merit in the Government's arguments, we need not rule on these points in view of other reasons for affirmance of the judgments. After careful consideration of the context in which the challenged remarks were made, we believe that the ruling of the District Court sustaining the objection and cautioning the jury to disregard the answer of witness Butcher more than adequately protected the defendants' rights and negated any prejudicial impact. The question on re-direct, to which an objection was sustained, cannot be considered harmful to these defendants since it in effect only sought a response from the witness to a statement made by defense counsel Scherer during cross-examination, and was thus invited by the questions asked by counsel for John

Bernard Industries. Since the objection was sustained the witness never had an opportunity to respond. After carefully considering the arguments of the parties we are satisfied that the District Court properly denied the motions for mistrial prompted by the alleged error in the testimony of witness Butcher.

Next we turn to the defendants' contention that the District Court erred in denying without a hearing their motions for a new trial and judgment of acquittal. This contention is facetious. The applicable local rule provides, in part: "The Court may in its *discretion,* order oral argument on its own motion, or upon application of either party * * *." (Our emphasis.) The individual defendants cite no authority for their contention that a hearing was required. The corporate defendant cites *Alberger v. Harvison,* 342 So.2d 537, 539 (Fla.Dist.Ct.App.1977). In that case the court held that assuming a hearing was required where new matters were raised, *Alberger* was not entitled to such a hearing. *See also Seaboard Coast Line Railroad Co. v. Magnuson,* 288 So.2d 302 (Fla.Dist.Ct. App.), *cert. denied,* 297 So.2d 30 (Fla.1974). The present case was not tried under the procedural rules governing litigation in Florida state courts. The parties have not indicated that they wished to present any new evidence to the District Court. Even if new evidence were involved, a hearing would usually not be required. *United States v. Hamilton,* 559 F.2d 1370, 1373 (5th Cir. 1977); *United States v. Ward,* 544 F.2d 975, 976 (8th Cir. 1976). Here, in the absence of new evidence, the District Court certainly did not abuse its discretion in ruling on the motions without a hearing.

A fourth assignment of error concerns the Government's introduction and use of summary charts. The charts were admitted through the testimony of Special Agent Butcher and summarized the transactions described in documentary evidence that was before the jury. In response to objections made by the defendants the charts were modified in various respects. After review of the record we are satisfied

the District Court was well within its discretion in admitting these charts under Fed. R.Evid. 1006. We will not reverse the trial court on this basis unless its discretion has been abused. *United States v. Brickey*, 426 F.2d 680, 686–87 (8th Cir.), *cert. denied*, 400 U.S. 828, 91 S.Ct. 55, 27 L.Ed.2d 57 (1970); *Koolish v. United States*, 340 F.2d 513, 533 (8th Cir.), *cert. denied*, 381 U.S. 951, 85 S.Ct. 1805, 14 L.Ed.2d 724 (1965).[4]

■ The corporate defendant and Munsch and Helgren contend that the District Court erred in denying their challenge to the array of the jury. The challenge was prompted by the District Court estimating, during voir dire, that the trial would last two weeks. Defense counsel objected to the array since counsel felt the trial might last longer and the jury might thereby be prejudiced against the defendants. After being advised of the defendants' position the District Court notified the prospective jurors that the trial might last three weeks and excused those who indicated a personal conflict with such a trial. The parties have cited no cases in which a conviction was reversed on comparable grounds. The District Court's actions were well within its sound discretion. *See United States v. Freeman*, 514 F.2d 171, 174 (8th Cir. 1975).

■ The sixth contention of the appellants is that certain documents admitted into evidence were inadmissible under the Federal Rules of Evidence. Generally, these documents reflected transactions among various corporate conspirators and some outside parties. Several of the documents appear to have been signed by the individual defendants. There is no claim that the documents are not authentic or are unreliable in any way. Rather the complaint is that the documents were hearsay and trial testimony tracing possession of the documents from the time they were turned over to the Government in response to a grand jury subpoena, and explaining

the procedures employed in gathering them in response to the subpoena, did not provide an adequate basis for admission. We disagree. Fed.R.Evid. 801(d)(2); 2 GARD, *Jones on Evidence* § 13:39 (1972). Admission of Plaintiff's Exhibit 45, a bill of lading of Hart Motor Express, presents a close question. However, the same transaction is reflected in Plaintiff's Exhibits 43 and 44. We can see no prejudice even if we assume that the bill of lading should have been excluded.

■ The corporate defendant and Newton complain that the District Court erred in granting the Government's requested instructions 13 and 19. Instruction 13 declared that the sales slips in question were claims within the meaning of 18 U.S.C. § 287. The defendants argue that the jury should have been instructed to decide whether the sales slips or the 1445 forms were the "claims" in this case. We disagree. The sales slips were the documents submitted to the Government for payment; they were claims under the statute. And, they were the documents utilized to perpetrate the fraud. The 1445 forms were merely requests for items needed by the Air Force. *See United States v. Wertheimer*, 434 F.2d 1004, 1006 (2d Cir. 1970). *See also United States v. Neifer-White Co.*, 390 U.S. 228, 233, 88 S.Ct. 959, 19 L.Ed.2d 1061 (1968) (civil action).

■ Instruction 19 stated that the Government had no obligation to provide the defendants with a list of witnesses before trial. This opinion has already discussed a related contention arising from the pretrial order. The instruction was an attempt to correct defense counsels' unnecessary remarks before the jury indicating that the Government was obligated to provide a list of witnesses before trial. While we do not encourage the giving of instructions on legal points, this distantly related to the issues before the jury. Here, the

---

4. Newton also argues that the trial court inadequately instructed the jury on the use to be made of the summary charts. He fails to specify where in the record any of the parties objected on this basis to the instructions given or

offered any instruction to cure the problem. In this situation we believe the instructions given the jury during the trial were adequate. Fed.R. Crim.P. 30.

defendants attempted to inject a false issue in the case. It was proper for the District Court to dispel any confusion on the matter by giving this clear, one-sentence, non-accusatory instruction.

■ John Bernard Industries, Inc. contends that the District Court erred in refusing to give its requested instructions 6 and 7. Instruction 6 would have raised the burden of proof on the issue of venue to beyond a reasonable doubt. However, venue need only be proved by a preponderance of the evidence. *United States v. Hopkins*, 529 F.2d 775, 777 (8th Cir. 1976), *cert. denied*, 431 U.S. 965, 97 S.Ct. 2920, 53 L.Ed.2d 1060 (1977); *United States v. Wolf*, 535 F.2d 476, 478 (8th Cir.), *cert. denied*, 429 U.S. 920, 97 S.Ct. 315, 50 L.Ed.2d 287 (1976). It is not error to refuse to give an instruction that is erroneous in any respect. *United States v. Lam Lek Chong*, 544 F.2d 58, 68 (2d Cir. 1976), *cert. denied sub nom. Liganoza v. United States*, 429 U.S. 1101, 97 S.Ct. 1124, 51 L.Ed.2d 550 (1977); *Stewart v. United States*, 395 F.2d 484, 491 (8th Cir. 1968).

The substance of requested instruction 7 was included in instruction 26 which was given by the District Court. That instruction was proper and adequate. *Rivers v. United States*, 368 F.2d 362, 364 (9th Cir. 1966). *See also United States v. Calvert*, 523 F.2d 895, 912–13 (8th Cir. 1975), *cert. denied*, 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976).

■ John Bernard Industries, Inc. also contends that the evidence did not support a finding that it or Patrick Simmons was a parent company within the contractual definition of that term. This issue was not raised at trial and we need not consider it. However, we have reviewed the contractual provisions and it is obvious that the contract prohibited transactions between affiliates as well as between a parent company and its subsidiaries. See ante at 1356. There was no requirement that a parent company be established for the transactions here to be fraudulent.

■ We next turn to an issue raised by only Munsch and Helgren. They contend that certain evidence introduced at trial should have been suppressed as the product of an illegal search and seizure. Munsch and Helgren never specify in their brief which exhibits at trial were supposedly improperly admitted. However, the thrust of their argument is that a fellow employee at the supply store was acting unlawfully when he searched through and photographed certain business records at the store and turned over the photographs and copies as well as other information to Government investigators. The fellow employee, Michael Moger, had come forward and agreed to assist the investigation after he had become convinced that the Government was being defrauded.

Following a suppression hearing, the District Court ruled that Munsch and Helgren lacked standing to challenge the search and seizure but that the constitutional rights of Patrick E. Simmons were violated by Moger's search of a desk drawer that produced a "cash box tape" because Moger did not have access to the desk. Apparently the tape was admitted at trial because only Simmons had standing to object and his case had been severed from those of the other defendants.

Our consideration of this issue has been made easier by the recent Supreme Court decision in *Rakas v. Illinois*, —— U.S. ——, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). In *Rakas*, as here, the lower court had determined that the defendants lacked standing to contest the search. In an enlightening opinion the Court held that the proper analysis was to forthrightly focus on the particular defendant's rights under the fourth amendment. The court noted that fourth amendment rights are personal and may not be asserted vicariously. It then stated:

Analyzed in these terms, the question is whether the challenged search or seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it. That inquiry in turn requires a determination of whether the disputed search

and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect. We are under no illusion that by dispensing with the rubric of standing used in *Jones* [*v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)] we have rendered any simpler the determination of whether the proponent of a motion to suppress is entitled to contest the legality of a search and seizure. But by frankly recognizing that this aspect of the analysis belongs more properly under the heading of substantive Fourth Amendment doctrine than under the heading of standing, we think the decision of this issue will rest on sounder logical footing.

99 S.Ct. at 429.

*Rakas* emphasized that *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), "stands for the unremarkable proposition that a person can have a legally sufficient interest in a place other than his own home so that the Fourth Amendment protects him from unreasonable governmental intrusion into that place." 99 S.Ct. 430. The fact that a person is "legitimately on premises" is not enough to ensure fourth amendment protection. The crucial question under the fourth amendment is now "whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Rakas, supra* at 430. *See United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

 Turning to the instant case, we are satisfied that under applicable Supreme Court precedent neither Munsch nor Helgren had a legitimate expectation of privacy in the business records contained in the office. Their brief does not specify any expectation of privacy but only contains a conclusory statement that Moger had invaded their privacy. The record establishes

numerous employees of the supply store had ready access to the office and the records stored there. The desk, from which some items were removed by Moger, was the property of the United States. Munsch was the most frequent user of the desk, but other employees used it from time to time, and it was actually an extension of the office filing system. The items removed from it were business records of the employer. None of the personal property of Munsch was removed or used. In this situation we are satisfied that the District Court was correct in refusing to suppress the evidence on the motion of these defendants.

 The only issue remaining is whether the evidence adduced at trial was sufficient to support the verdicts of guilty.[5] Munsch and Helgren make a two-pronged attack. They first attempt to cast doubt on the credibility of Government witnesses. However, issues of credibility are for the jury to resolve. Second, they make a vague argument that persons who begin employment in an operation that is already breaking the law should not be punished if they carry on the unlawful activity. We do not believe that individual responsibility can be so easily evaded or immunized. There was ample evidence that both women became aware of the criminal activity and joined in it without bringing it to the attention of law enforcement officers. Their guilt was clear. Similarly, we reject the challenges of Newton and John Bernard Industries, Inc. to the sufficiency of the evidence. On each count the evidence was legally adequate.

Judgments affirmed.

---

5. Munsch and Helgren also include among the issues, "Is the statute under which the defendants were charged unconstitutionally vague?" They cite no authority and make no argument on this point. In fact, they never answer the question. In this situation we decline to decide the "issue" although there is no doubt but that the statute is constitutional.