**UNITED STATES of America, ex rel. Ted MEANS, Petitioner,**

**v.**

**Hon. Herman SOLEM, Warden, South Dakota State Penitentiary, Sioux Falls, South Dakota, Respondent.**

**No. CIV79–4049.**

United States District Court, D. South Dakota, S. D.

Nov. 7, 1979.

James D. Leach, Rapid City, S. D., and Sidney B. Strange, of Strange & Strange, Sioux Falls, S. D., for petitioner.

LeAnn Larson Finke, Asst. Atty. Gen., Pierre, S. D., for respondent.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

The petitioner Ted Means having been convicted of riot to obstruct justice seeks a writ of habeas corpus in accordance with 28 U.S.C. section 2254. The petitioner raises the following claims in his writ:

(1) that the refusal of the trial court to instruct the jury on the defenses of self defense, defense of others, and ignorance or mistake of fact was a denial of his rights to due process of law, to trial by jury, and to require the prosecution to prove him guilty beyond a reasonable doubt;

(2) that in view of the petitioner's alleged purpose of assembling for a peaceful protest, the doctrine of *strictissimi juris* provides further support for his claim that the refusal of his requested instructions was a denial of his constitutional rights;

(3) that SDCL 22–10–4, the riot to obstruct justice statute, was unconstitutionally applied to the petitioner because he could have been convicted under it for merely sitting in the courtroom in a manner which appeared threatening;

(4) that the South Dakota Supreme Court denied him equal protection of the law and due process of law by irrationally discriminating against him in relation to a similarly situated appellant, Russell Means; and

(5) that the South Dakota Supreme Court denied petitioner his rights to due process of law and to be free from cruel and unusual punishment by condoning the use of deadly force by a police officer against a non-violent, non-fleeing nonfelon.

## FACTUAL AND PROCEDURAL HISTORY

■ This court has previously reviewed a number of the facts relating to the petitioner's conviction as they were presented in the court trial of Russell Means. *United States ex rel. Means v. Solem*, 457 F.Supp. 1256 (D.S.D.1978). The petitioner and Russell Means were charged and convicted of the same crime arising from the same incident and allegedly shared the common purpose to obstruct justice. In Russell Means' habeas petition this court found conflicting evidence as to what happened but deferred to the trial judge's resolution of these conflicts as he was the ultimate fact finder in the case. The verdict of a jury, however, must be interpreted in light of the evidence and the instructions. *Yates v. United States*, 354 U.S. 298, 311–312, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957). Therefore, because of the issues raised by the petitioner Ted Means relating to refusal to instruct a jury on self-defense, defense of others, and mistake of fact, a broader scope of review of the facts is justified in his petition for habeas corpus.

The incident which led to the petitioner's conviction occurred on April 30, 1974, during the trial of five Indian defendants. These defendants were being tried before Judge Bottum at the Minnehaha County Courthouse in Sioux Falls, South Dakota, for participating in a riot at Custer, South Dakota. There was great interest among the Indians who had gathered in Sioux Falls, South Dakota, in the outcome of this trial.

On April 26, 1974, four days prior to the alleged riot, a number of Indian spectators in the courtroom refused to rise for Judge Bottum. Their purpose in refusing to rise was to protest what they believed to be a double standard of justice for the Indian defendants in this trial and all Indians tried in South Dakota courts. Judge Bottum ordered the courtroom cleared and the spectators were peacefully carried from the courtroom by mostly plain-clothed officers without further incident. There was, however, conflicting evidence presented with respect to whether some of the Indian women carried from the courtroom suffered indignities at this time.

The conduct and motives of the petitioner and other involved persons during the following days were the subject of much dispute at the trial. One of the state's witnesses testified that American Indian Movement members and supporters met in the Van Brunt Building on April 29, 1974, to plan an offensive posture and to "prepare to do battle" in the courtroom the next day. He further testified that the spectator seats in Judge Bottum's courtroom were to be filled with strong male volunteers to carry out these plans.

A much different version of these plans was presented by the defendants' evidence. According to this version, group meetings were held nightly at the Van Brunt Building, where many Indians interested in the Custer trials gathered for food and sleep. At the April 29 meeting no plans for any violence were made but rather a peaceful sit-in similar to the one four days prior was contemplated. Only men were asked to sit in the courtroom because the Indian spectators feared further indignities or violence by the Sioux Falls police.

Certain security measures had been imposed following the April 26th incident. Therefore on the morning of April 30th the allotted number of 20 spectators including Indians and certain members of the clergy and press were admitted to the courtroom. They passed through a metal detector and were frisked to assure the security personnel that they were unarmed.

The spectators again refused to rise as Judge Bottum entered the courtroom and the bailiff announced for all to rise. Judge Bottum ordered those who would not stand to be cleared from the courtroom. After

the spectators had been sitting in the courtroom for approximately two hours, the Sioux Falls Tactical Squad equipped with riot batons (40 inch night sticks with steel ball ends), gloves with metal knuckles, gas masks, face shields, mace, heavy boots, handcuffs, and sidesarms under their jumpsuits, entered the courtroom to clear it in accordance with the Judge's order.

There is great disagreement in the testimony as to what occurred next in the courtroom. The state's evidence showed that the Indian spectators were the aggressors. Russell Means was to have first struck a member of the Tactical Squad. Specifically as to the petitioner, a Tactical Squad member testified that he separated Ted from another Squad member and then sidestepped a swing by Ted and struck Ted with a buttstroke knocking him to the ground.

A number of defense witnesses testified that the spectators reacted defensively to the Tactical Squad. According to these witnesses, all spectators rose spontaneously when the Squad came into the courtroom unexpectedly at a fast gait. One woman in the courtroom was quoted as saying something similar to "Oh my God, they are going to kill them." The first violence was to have occurred when either Russell Means or David Hill (one of the Custer defendants) was struck by the batons of the Tactical Squad. Specifically as to the petitioner the testimony indicated that as soon as Russell was hit Ted was hit and the next moment Ted was lying on the floor without any more struggle. The petitioner did obtain a large "goose egg" size bump on the head from the confrontation.

After the fighting began, chairs were thrown, windows were broken, and serious injuries were suffered. Outside the courthouse stones, debris, and other objects were thrown at the courthouse.

The petitioner and a number of the other spectators were arrested for rioting to obstruct justice in violation of SDCL section 22–10–4.[1] The petitioner was tried before a jury with co-defendant Edgar Bear Runner. Edgar Bear Runner was acquitted by the jury.[2] The petitioner was convicted of the charge and sentenced to a term of thirty months with twelve months suspended upon compliance with certain conditions. On March 1, 1977, the petitioner appealed his conviction to the South Dakota Supreme Court. On March 14, 1979, the South Dakota Supreme Court affirmed the conviction in *State v. Means*, S.D., 276 N.W.2d 699 (1979). A petition for rehearing before the South Dakota Supreme Court was also denied on April 2, 1979. The petitioner is currently serving his sentence under the custody of the State of South Dakota.

The petitioner's writ of habeas corpus was filed with this court on April 19, 1979, and oral argument was heard on July 18, 1979. Along with the briefs and supplemental letters that have been submitted, this court has also received and studied the trial court record and transcripts and the briefs and supplemental briefs submitted to the South Dakota Supreme Court.

All the claims raised by the petitioner's writ to this court have been raised with and finally decided on appeal by the South Dakota Supreme Court. It is not required for the petitioner to seek further state postconviction review of the issues that the South Dakota Supreme Court has finally decided. *Orricer v. State*, 85 S.D. 293, 181 N.W.2d 461, 463 (1970), *United States ex rel. Russell Means v. Solem*, 457 F.Supp. 1256, 1261 (D.S.D.1978). Accordingly, the petitioner has exhausted his state judicial remedies in accordance with 28 U.S.C. section 2254(b) and this court may therefore examine the petitioner's claims.

---

1. SDCL section 22–10–4, now repealed, used to provide: If the purpose of a riotous assembly was to resist the execution of any statute of this state or of the United States or to obstruct any public officer of this state or of the United States, in the performance of any legal duty, or in serving or executing any legal process, every person guilty of participating in the assembly is punishable by imprisonment in the state penitentiary not exceeding ten years and not less than two years.

2. The issue of whether Edgar Bear Runner was present in the courtroom on April 30, 1974, an issue not raised by the petitioner, was presented to the jury.

In reviewing the petitioner's claims, this court must use the standard of review that upholds a state court conviction unless "the trial errors or irregularities infringe upon a special constitutional protection or are so prejudicial as to amount to a denial of due process." *Atwell v. State*, 426 F.2d 912, 915 (8th Cir. 1970); *Zemina v. Solem*, 438 F.Supp. 455, 469 (D.S.D.1977), aff'd 573 F.2d 1027 (8th Cir. 1978).

## THE JURY INSTRUCTIONS

The petitioner complains that the refusal of the trial judge to instruct the jury on self defense, defense of others, and ignorance or mistake of fact was a denial of due process, right to a trial by jury, and the right to be found guilty beyond a reasonable doubt. The South Dakota Supreme Court, finding that self defense may be a valid defense to the crime of riot to obstruct justice under certain circumstances, affirmed the trial judge's refusal to instruct the jury on these defenses. *State v. Means*, S.D., 276 N.W.2d 699 (1979).

The law entitles a defendant to an instruction upon meeting two requirements. First, a timely request must be made for an instruction stating a correct statement of the law. And second, there must be evidence to support the requested instruction. *United States v. Brake*, 596 F.2d 337, 339 (8th Cir. 1979); *United States v. Rabbitt*, 583 F.2d 1014, 1024 (8th Cir. 1978), cert. denied, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979); *Zemina v. Solem*, 438 F.Supp. 455, 467 (D.S.D.1977), aff'd 573 F.2d 1027 (8th Cir. 1978).

A. Petitioner made a proper request.

There were a number of self defense, defense of others, and ignorance or mistake of fact instructions requested in a timely manner by the petitioner's counsel. They are set out in the margin.[3]

The instruction on ignorance or mistake of fact is from the South Dakota Pattern Jury Instruction 2–14–8 and its correctness is not questioned. The issue of whether the self defense or defense of others instruc-

---

3. The following instructions offered by the petitioner were denied by the trial court:

Defendant's Requested Instruction No. 7:

Where a person is being unlawfully assaulted and is exercising his right to lawful self-defense, any other person may lawfully come to their defense. A person coming to the defense of another may lawfully use any force or violence which the person attacked is justified in using in his own self-defense. He is privileged to use whatever violence on the assailant as is reasonably necessary to prevent the threatened injury.

Defendant's Requested Instruction No. 8:

The defendants have the burden of introducing evidence as to the justification for self-defense. When the defendants introduce such evidence, the state then has the burden of proving beyond a reasonable doubt that the alleged justification for self-defense did not exist.

Defendant's Requested Instruction No. 26:

It is lawful for a person who is being assaulted, and who has reasonable ground for believing that bodily injury is about to be inflicted upon him, to stand his ground and defend himself from such attack, and in doing so he may use all force and means which he believes to be reasonable and which would appear to a reasonable person, in the same or similar circumstances, to be necessary to prevent the injury which appears to be imminent.

Defendant's Requested Instruction No. 27:

A person who has been attacked and who is exercising his right of lawful self-defense is not required to retreat, and he not only may stand his ground and defend himself against the attack but also may pursue his assailant until he has secured himself from danger if that course appears to him and would appear to a reasonable person in the same situation, to be reasonably and apparently necessary; and this is his right even though he might more easily have gained safety by withdrawing from the scene.

Defendant's Orally Requested South Dakota Pattern Jury Instruction Vol. II, 2–14–9h:

The right of self-defense exists only as against an unlawful attack. The right does not exist, even though bodily injury appears probable, as against a person who, in threatening or appearing to threaten injury, is acting unlawfully.

Defendant's Requested Instruction No. 25:

An act committed or an omission made under an ignorance or mistake of fact which disproves any criminal intent is not a crime.

Where a person in good faith believes in the existence of certain facts, and acts or omits to act with reference to such believed facts in a manner which would be lawful if the facts were really as he believes them to be, he is not guilty of crime, although his act or omission is such that if committed or made by one who knew the true facts it would constitute a criminal offense.

tions offered were correct statements of South Dakota law, however, was questioned for the first time during the oral arguments before this court. The instructions offered speak of an unlawful assault or attack. They do not explain that in accordance with SDCL section 22–18–2, a policeman's use of force only becomes unlawful when it is greater than that which is necessary in the performance of his legal duties.[4]

In *State v. Grimes*, S.D., 237 N.W.2d 900 (1976), the South Dakota Supreme Court approved of an instruction on defense of others from the use of force by a policeman in carrying out a legal duty in terms of resisting an unlawful assault or attack rather than in terms of resisting the officer's use of unnecessary, unreasonable, or excessive force. This court will not substitute its interpretation of state law for that of the state supreme court. *Zemina v. Solem, supra* at 467.

However, even if the holding in *Grimes* is determined insufficient to resolve the issue of whether the instructions offered by the defendant were proper statements of state law, the petitioner is not precluded from claiming error. The trial judge made it clear that no matter how the offered instruction was framed he intended to give no instruction on self defense or defense of others. ·

It is the Court's position that if any self defense instruction were allowed it would have been 2–14–9h which is an instruction on self defense against an unlawful act and the Court has reviewed that situation in 77 CJS 12 and 54 Am.Jur., Section 13, page 513. And for that reason, did not give any instruction on self defense.

Settlement of Instructions Transcript p. 40. It appears from this statement that it would have been futile for the defendant to offer further instructions on self defense or defense of others.

Furthermore, once the trial judge had been alerted to an omission in the instructions, it would have been his duty to give a proper instruction to cover the omission. If a requested instruction "directs the court's attention to a point upon which the jury has not been charged but upon which an instruction would be helpful, the court's error in failing to charge may not be excused by technical defects in a request to charge." *Emery v. Northern Pacific Railroad Company*, 407 F.2d 109, 112 n. 3 (8th Cir. 1969); *Dulin v. Circle F. Industries, Inc.*, 558 F.2d 456, 469 (8th Cir. 1977); *cf. Schmidt v. Wildcat Cave, Inc.*, S.D., 261 N.W.2d 114, 116 (1977)). In those cases in which it is stated that it is not error to deny a proffered request if it is in any respect incorrect, the trial judge's entire charge was found to have adequately informed the jury of the necessary law. *See: United States v. John Bernard Industries, Inc.*, 589 F.2d 1353, 1361 (8th Cir. 1979); *Stewart v. United States*, 395 F.2d 484, 489–90 (8th Cir. 1968). If instructions on self defense or defense of others were supported by the evidence they were necessary and it was error not to give them. The petitioner accordingly has met the first step of the test; he has made a proper request for the instructions on self defense, defense of others, and ignorance or mistake of fact.

B. There was evidence to support the petitioner's requested instructions.

The South Dakota Supreme Court concluded that there was no evidence to support the instruction offered by the petitioner because he had intentionally "invited the confrontation" with the Tactical Squad when he knowingly resisted the lawful order to stand or leave the courtroom.

The state court's decision that there was no evidence to support the requested instructions is a conclusion of law. Even giving deference to the trial court's rulings, this court is not bound by that

---

4. SDCL section 22–18–2 states:
 To use or attempt or offer to use force or violence upon or toward the person of another is not unlawful when necessarily committed by a public officer in the performance of any legal duty or by any other person assisting him or acting by his direction.

decision. Although a state court's findings of fact are presumptively valid in a habeas corpus review, a state court's conclusions of law are not binding for the "state court 'may have misconceived a federal constitutional right.'" *Zemina v. Solem, supra* at 467, citing *Brown v. Allen,* 344 U.S. 443, 508, 73 S.Ct. 397, 97 L.Ed. 469 (1953); *Wolfs v. Britton,* 509 F.2d 304, 308 (8th Cir. 1975).

The South Dakota Supreme Court correctly stated in their opinion affirming the petitioner's conviction, that the "police officers had authority to use such force as was necessary" to remove the petitioner and the other spectators who refused to obey the court's order to leave the courtroom. *State v. Means, supra* at 701; SDCL section 22–18–2. They also correctly pointed out that the right to self defense is not available to one who provokes a confrontation. *State v. Keliher,* 46 S.D. 484, 194 N.W. 657 (1923); South Dakota Pattern Jury Instructions, Vol. II, 2–14–9i, c (1970). In following these legal concepts this court agrees that the petitioner had no right to defend himself or others from the lawful use of such force as was necessary to remove him and the other spectators from the courtroom. Such force was indeed invited by the petitioner.

However, the Sioux Falls Tactical Squad was not authorized to use unlawful force in removing the spectators who remained seated in the courtroom. If the police were the aggressors in using unnecessary, unreasonable, or excessive force it was unlawful and certainly uninvited by peaceful disobedience to a court order. Therefore the fact that the petitioner and the other spectators peacefully remained in the courtroom in violation of a court order, the

act which the South Dakota Supreme Court called provocation, only invited or provoked the use of lawful or necessary force by the police in performing their duty of removing the spectators. It did not remove the theory of self defense or defense of others if there was evidence that the police were the aggressors in using unnecessary or excessive force which the petitioner reasonably believed could lead to bodily harm.[5]

Furthermore, the fact that there was no evidence to indicate that the petitioner was ignorant of or mistaken concerning the nature of the trial court's order does not justify the denial of the instruction on ignorance or mistake of fact. If evidence existed to show that the petitioner believed in good faith that he was protecting himself or other spectators in the courtroom from unnecessary or excessive use of police force and that he acted with reference to those facts in a manner which would be lawful if the facts were really as he believed, then it was error not to give an instruction on mistake or ignorance of fact which the jury could have found to negate the specific intent of the crime.

This court finds that there was evidence to support the proposition that the police were the aggressors in using force that was unnecessary or excessive under the circumstances in performing their legal duties. This court noted in *Zemina v. Solem, supra* at 468, that "a defendant has the right to have his theory presented in the instructions '(e)ven when the supporting evidence is weak or of doubtful credibility.'" Here as in *Zemina,* the evidence supporting the requested instructions surpassed this protective standard.[6] There was evidence

5. Although I find no South Dakota authority on this matter, it has been held in other jurisdictions that one knowingly and lawfully being arrested has the right to resist excessive police force when he reasonably fears bodily harm. *See: State v. Mulvihill,* 57 N.J. 151, 270 A.2d 277, 44 A.L.R.3d 1071 (1970); citations in 77 A.L.R.3d 281–300 (Right to Resist Excessive Force Used in Accomplishing Lawful Arrest).

6. The South Dakota Supreme Court acknowledged the disagreement in evidence in the trial

of Russell Means, whose conviction arose from the same incident and who allegedly shared the common purpose with Ted Means to obstruct justice. In its appellate opinion it stated: "there is outright disagreement over what happened after the Tactical Squad entered the courtroom." *State v. Means,* 268 N.W.2d 802, 816 (S.D.1978). And, "there are, indeed, conflicting versions of what actually took place after the Tactical Squad entered the courtroom on the morning of April 30, 1974." *Id.* at 818.

that the petitioner and the others in the courtroom were unarmed and that they had previously disobeyed the court's order to stand or leave and had been peacefully carried from the courtroom by mostly plain-clothed officers. On this occasion there was evidence to show that the Sioux Falls Tactical Squad unexpectedly ran into the courtroom with riot batons, metal knuckles, sidearms, and mace. There is evidence to show that the Tactical Squad members were the first to use any violence in the courtroom and that the petitioner and the others reacted only in defense. One of the clergymen present stated: "(I) had expected that there would be a hesitance, an opportunity for these people to be allowed to leave or urged to leave but there was no hesitance, it was just coming at them with the clubs." Even one of the Tactical Squad members testified that others in the courtroom could have perceived that he was the aggressor in his confrontation with Russell Means.

 The petitioner's defense theories were applicable to the factual situation at issue and evidence existed to show that the police were the aggressors in using more force than was necessary and that the petitioner feared he and the others in the courtroom were in bodily danger. The resolution of the conflicting evidence is for the jury. It was error not to allow the jury to be instructed on the petitioner's theories of self defense, defense of others, and ignorance or mistake of law so that they could adequately determine the petitioner's guilt or innocence.

C. The error was of constitutional magnitude.

 The trial court's error in instructing the jury must be of a constitutional magnitude before this court will grant the petitioner's writ of habeas corpus and set aside the conviction. *Spratlin v. Solem,* 577 F.2d 56, 60 (8th Cir. 1978); *Wilson v. Parratt,* 540 F.2d 415 (8th Cir. 1976). The omission of the three requested instructions when "evaluated in light of the totality of the circumstances" must so infect the "entire trial that the resulting conviction violate(s) due process." *Kentucky v. Whorton,* 441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979); *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977).

The petitioner claims that his constitutional right to due process of law, trial by jury and the right to be proven guilty beyond a reasonable doubt have been denied him by the failure to properly instruct the jury. This court has previously found that a similar error was of constitutional magnitude depriving a petitioner of his fundamental rights of trial by jury and due process of law in *Zemina v. Solem,* 438 F.Supp. 455 (D.S.D.1977), aff'd 573 F.2d 1027 (8th Cir. 1978). In *Zemina,* as in this case, there was conflicting evidence as to whether the defendant acted in self defense or defense of others. In both cases, the trial court refused to give the instructions on self defense or defense of others and the defendant was thereafter convicted. The type of confrontation and the alleged crime committed are admittedly different in the two cases; however, the constitutional issues are the same.

In *Zemina,* the constitutional magnitude of the error was unquestioned.

[T]he judge screened the evidence relating to excuse and justification and apparently determined that the jury did not need to consider it. In giving an instruction that petitioner could be convicted for merely participating in a crime with criminal intent without allowing the jury to consider evidence to support theories that there was no crime or that petitioner had no criminal intent, the judge, in effect, directed a guilty verdict, for petitioner had already admitted participation. The prejudicial impact of such a course of action cannot be questioned. The United States Constitution guarantees all criminal defendants a trial by an impartial jury. What Fred Zemina received was, in effect, a trial by the judge.

*Id.* at 469–70. *See also: Strauss v. United States,* 376 F.2d 416, 419 (5th Cir. 1967). The petitioner Ted Means, like Fred Zemi-

na, was denied the right to have a jury as the fact-finder. When the judge declined to give any instruction on the petitioner's proposed defenses he removed the issue of intent from the jury. In giving an instruction that petitioner could be convicted for acting with intent in a riotous assembly without allowing the jury to consider evidence to support theories that there was no crime or that petitioner had no criminal intent, the judge in effect directed a verdict. Like Fred Zemina, Ted Means received a trial by the judge rather than a trial by a jury which the United States Constitution guarantees all criminal defendants.

This court found also in *Zemina* that the trial judge's refusal to instruct on Zemina's defense theories, denied him his right under the due process clause to raise a reasonable doubt in the jurors' minds. *Id.* at 470. Ted Means likewise was not allowed to raise a reasonable doubt in the jurors' minds when the theories of self defense, defense of others, and ignorance or mistake of fact were removed from the jurors' consideration.

The due process clause requires the prosecution to prove guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). This standard of proof

> "plays a vital role in the American scheme of criminal procedure," because it operate to give "concrete substance" to the presumption of innocence to ensure against unjust convictions, and to reduce the risk of factual error in a criminal proceeding. (citations omitted) At the same time by impressing upon the fact-finder the need to reach a subjective state of near certitude of the guilt of the accused, the standard symbolized the significance that our society attaches to the criminal sanction and thus to liberty itself.

*Jackson v. Virginia*, —— U.S. ——, ——, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see also Stump v. Bennett*, 398 F.2d 111, 117 n. 5 (8th Cir. 1968), *cert. den.* 393 U.S. 1001, 89 S.Ct. 483, 21 L.Ed.2d 466 (1968). The error in not instructing on the petitioner's defense theories had the effect of reducing the prosecution's burden of proof by removing from the jury's consideration the determination of criminal intent which was central to the defendant's guilt or innocence.

I have examined the entire charge that the trial judge gave to the jury, and conclude that the petitioner's theories of defense were not adequately covered by the other instructions or arguments of counsel. Although the jury was instructed on the element of intent, the instructions made no mention of self defense, defense of others, or ignorance or mistake of law as theories to negate the criminal intent.

Therefore, without considering the other issues raised by the petitioner which are tied to the failure to instruct on the defense theories offered by the petitioner, this court finds that the error in denying these instructions was of constitutional magnitude. In view of the total lack of instruction on excuse or justification for the alleged acts of the defendant and the substantial evidence to support the requested defense instruction, the denial of the requested instructions in this case withdrew the central issue of the defendant's intent from the jury. This error denied petitioner his right to trial by jury and his due process right which required the prosecution to prove him guilty beyond a reasonable doubt. These errors cannot be "harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), *reh. den.* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967); *Zemina v. Solem, supra* at 470.

Accordingly, it is ordered that the petition for a writ of habeas corpus be granted. It is further ordered that Ted Means shall be released unless retried within 60 days from the date of this memorandum decision or within 60 days from the mandate received from the Eighth Circuit Court of Appeals in the event of an appeal by the State of South Dakota resulting in an affirmance of this decision.