STATE of South Dakota, Plaintiff
and Appellee,

v.

John Leslie RASH, Defendant
and Appellant.

No. 12876.

Supreme Court of South Dakota.

Argued March 13, 1980.

Decided July 1, 1980.

Kevin F. Manson, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

David R. Gienapp of Arneson, Issenhuth & Gienapp, Madison, for defendant and appellant.

MORGAN, Justice.

A jury found appellant guilty of aggravated assault in violation of SDCL 22–18–1.-1(1). The trial court sentenced him to serve ten years in the South Dakota State Penitentiary with credit for time served pending the disposition of his case. He appeals from that judgment and sentence. We affirm.

Early in the afternoon of January 20, 1979, appellant was at a bar. He called home and told his wife, Donna, who was about three months pregnant at the time, to keep the children at home so that when he returned he could take them to a movie in Sioux Falls. Nevertheless, Donna allowed two of the children to go to a neighbor's house to play. When appellant arrived home at about 4:00 p. m. and realized that all of the children were not there, he and Donna began arguing in the living room-kitchen area. As appellant and Donna were arguing, they moved into their bedroom. While in the bedroom, the two began to physically fight, ending up on the floor. Appellant knocked Donna's head against the floor and possibly against the dresser. He hit her in the neck with his knee and kicked her in the head with the cowboy boots he was wearing. He also sat on top of her while she was on the floor, swearing at her and saying that he was going to kill her. All together, Donna received about thirty blows.

After being called, an ambulance crew arrived and took Donna to the Madison Hospital emergency room where she was treated and transferred to McKennan Hospital in Sioux Falls, South Dakota. At McKennan, Donna remained in the intensive care unit (ICU) for about five days, after which she was moved to a general medical floor where she was still located at the time of the trial, over four months after the incident occurred.

Donna's injuries were rather extensive. She had a fractured skull, numerous bruises on her face, left flank areas, and back and hip areas. There were also several lacerations of her scalp with some bleeding. Her left eye was badly bruised and had a hemor-

rhage just under the tissue of the white of the eye (a subconjunctival hemorrhage). At the time, she also had partial paralysis of her left side.

At the trial her doctor testified that she was still weak on the left side, that she had a problem of muscle coordination, and that her speech was thick. He also testified that due to the length of time that it had taken her to recover, there was a good possibility that she would be left with some lasting effects from the injuries. Also, if she were to have gone home at the time of trial, she would have been unable to care for herself. He also testified that the baby she was carrying appeared to be healthy and that she would probably have a normal delivery.

During the course of appellant's trial, several photographs of the victim's injuries were introduced and received into evidence, some of which appellant objected to. In all, there are twelve close-up pictures of Donna's injuries and one full shot of her lying in ICU at McKennan.

Appellant proposed two jury instructions which instructed the jury on specific intent. The trial court refused them both. None of the instructions actually given dealt with intent. Two of the jury instructions explained aggravated assault as charged under SDCL 22–18–1.1(1), and the trial court also instructed the jury on the lesser included offense of simple assault. The jury returned a verdict of guilty of aggravated assault as charged in the information, and the trial court sentenced appellant to serve ten years in the South Dakota State Penitentiary with credit for time served in the Lake County Jail.

Appellant first argues that one of the essential elements of SDCL 22–18–1.1(1) is specific intent. The trial court disagreed and denied his jury instructions on specific intent. SDCL 22–18–1.1(1) reads:

Any person who:

(1) Attempts to cause serious bodily injury to another, or causes such injury, under circumstances manifesting ex-treme indifference to the value of human life;

.  .  .  .  .

is guilty of aggravated assault. .  .  .

Before deciding whether or not SDCL 22–18–1.1(1) requires specific intent, it is necessary to determine what specific intent is. "Specific intent has been defined as 'meaning some intent in addition to the intent to do the physical act which the crime requires,' while general intent 'means an intent to do the physical act—or, perhaps, recklessly doing the physical act—which the crime requires.'" *People v. Lerma,* 66 Mich.App. 566, 567, 239 N.W.2d 424, 425 (1976) (citation omitted).

SDCL 22–18–1.1(1) refers to "attempts" but not to "intent." Appellant argues that the use of the word "attempts" shows that the legislature meant to require the state to prove that a defendant had a specific desire. Yet this court has said that the word "attempt" means that an accused's acts "unequivocally demonstrate that a crime is about to be committed." *State v. Martinez,* 88 S.D. 369, 372, 220 N.W.2d 530, 531 (1974).

Appellant also argues that a subjective desire resulting in specific intent is necessary to show that appellant's actions "manifest[ed] an extreme indifference to the value of human life." His contention is that the legislature left out the word "recklessly," thereby intentionally changing the offense from a general intent crime to a specific intent crime. We disagree.

[S]pecific intent crimes would be limited only to those crimes which are required to be committed either "purposefully" or "knowingly", while general intent crimes would encompass those crimes which can be committed either "recklessly" or "negligently". Thus, in order to commit a specific intent crime, an offender would have to subjectively desire or know that the prohibited result will occur, whereas in a general intent crime, the prohibited result need only be reasonably expected to follow from the offender's voluntary act, irrespective of any subjective desire to have accomplished such result.

*People v. Lerma,* 66 Mich.App. at 569–70, 239 N.W.2d at 425–426.

Appellant argues that the Model Penal Code, Section 211.1(2) sets forth a definition of aggravated assault which is quite similar to our statute except that the Model Penal Code includes the words "purposely, knowingly or recklessly." Arguably, the first two would require a specific intent while the third would not. He states that by omitting the word "recklessly," the legislature obviously meant to make the crime one of specific intent. We believe that the opposite would also then be true; that by leaving out "purposely and knowingly," they meant to make the statute one of general intent.

■ In reading the statute as written, we conclude that the legislature intended for the statute to cover *all* acts, so long as (1) the person either attempted to cause or actually did cause serious bodily injury to another, and (2) the circumstances under which the act was done manifested extreme indifference to the value of human life. The statute says nothing about intent.

"[T]he legislature may forbid the doing of an act and make its commission a crime without regard to the intent or knowledge of the doer. Whether criminal intent or guilty knowledge is an essential element of a statutory offense is to be determined by the language of the act in connection with its manifest purpose and design." *State v. Nagel,* 279 N.W.2d 911, 915 (S.D.1979).

The legislature left out all three words ("purposely," "knowingly," and "recklessly"), thereby encompassing all situations involving circumstances manifesting extreme indifference to the value of human life, regardless of the intent of the person committing the assault. This is exactly what *Nagel* says the legislature may do. The Supreme Court of Iowa has said that "[t]he act itself is prohibited and specific intent on the part of the offender is not an essential ingredient of the crime." *State v. Wallace,* 259 Iowa 765, 774, 145 N.W.2d 615, 621

(1966). We hold, therefore, that an instruction on specific intent was not required.

■ Appellant next claims that the trial court erred in admitting into evidence color photographs of the victim's injuries. He objected to the introduction of the photographs for the reasons that they were introduced only to inflame the passions and prejudices of the jury, that they were repetitive, and that three of the exhibits were too far removed from the time of the alleged crime to have any probative value.

This court has followed the rule that in all aggravated assault cases "the condition of the person assaulted and the nature and extent of his injuries may be shown . . . ." *State v. Compton,* 48 S.D. 430, 433, 205 N.W. 31, 32 (1925). We have also said that:

[P]hotographs are admissible into evidence "when they accurately portray anything which it is competent for a witness to describe in his own words, or where they are helpful as an aid to a verbal description of objects or conditions and relevant to some material issue." Photographs are not inadmissible simply due to the fact that the details of the crime are vividly brought to the jury's attention or because they "incidentally tend to arouse passion or prejudice." Like any other demonstrative evidence, the admission of photographs lies within the sound discretion of the trial court.

*State v. Kaseman,* 273 N.W.2d 716, 726 (S.D.1978) (citations omitted). See also *State v. Kane,* 266 N.W.2d 552 (S.D.1978); *State v. Disbrow,* 266 N.W.2d 246 (S.D. 1978); *State v. Miller,* 248 N.W.2d 56 (S.D. 1976); *State v. Satter,* 90 S.D. 485, 242 N.W.2d 149 (1976); *State v. Aschmeller,* 87 S.D. 367, 209 N.W.2d 369 (1973); *State v. Zemina,* 87 S.D. 291, 206 N.W.2d 819 (1973); *State v. Austin,* 84 S.D. 405, 172 N.W.2d 284 (1969); and *State v. Zobel,* 81 S.D. 260, 134 N.W.2d 101 (1965).

In all of these cases this court found that the pictures, slides, or X-rays were all properly admissible. This was true even if the pictures were somewhat gruesome, cumula-

tive, or capable of arousing passion or prejudice in the jury.

Appellant's argument concerning the timeliness of three of the photographs also seems to be untenable. All three photos were taken of Donna while she was in ICU at McKennan. One of the doctors testified that Donna was in ICU for about five days following the assault. The pictures, therefore, must have been taken sometime during that five-day period, and appellant admits in his brief that they were taken four days after the assault.

> The failure of the photographer to remember the exact date of taking the pictures is immaterial in view of the surrounding circumstances indicating beyond all doubt that the wounds photographed were the same wounds received in the attack. . . . [I]t is not open to serious question that the wounds were in better condition when photographed since the victim had had the benefit of a doctor's care and hospital treatment at the later date. We believe the admission of such photographs, not taken immediately or shortly after the incident, is a matter within the trial court's discretion[.]

*State v. Lee*, 80 Ariz. 213, 215, 295 P.2d 380, 381 (1956). The trial court did not, therefore, err in admitting the photographs into evidence.

Accordingly, the judgment of the trial court is affirmed.

All the Justices concur.