STATE of South Dakota, Plaintiff
and Appellee,

v.

Ronald Carl HUBER, Defendant
and Appellant.

No. 14085.

Supreme Court of South Dakota.

Considered on Briefs March 21, 1984.

Decided Sept. 26, 1984.

Mark Smith, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Bryce Flint of Jackley & Flint, Sturgis, for defendant and appellant.

HENDERSON, Justice.

This is an appeal from four convictions in Meade County, South Dakota, arising out of a high-speed chase of appellant's vehicle by law enforcement officers. We affirm.

State Trooper Oren Hindman, while on duty, was en route to his home at 3:00 a.m., the morning of May 15, 1982. He was driving a marked patrol car, proceeding on Ball Park Road, City of Sturgis, South Dakota. Officer Hindman noticed a vehicle, about one block ahead, which began to accelerate quite fast. The vehicle was not driving a straight line and weaved, constantly, twice moving completely to the left side of the road. As the car was also exceeding the speed limit, Officer Hindman radioed the Sturgis Police that he would be attempting to stop the vehicle.

Upon seeing the vehicle run a stop sign, Officer Hindman activated the red lights atop his cruiser. As he approached within a half block, the vehicle accelerated. Officer Hindman then activated his siren, but the vehicle continued to accelerate. Simul-taneously, a police cruiser approached in an on-coming intersection. The pursued vehicle swerved, slid sideways, and came to a stop. Officer Hindman reached the vehicle shortly after several other city police arrived on the scene. He recognized the driver of the automobile as appellant Ronald Carl Huber.

Appellant then exited his car, whereupon Officer Hindman and other officers attempted to handcuff him. Appellant jerked his hand, kicked, swore profusely, and threatened the officers. The officers then leaned appellant over the hood of a vehicle to facilitate handcuffing him, whereupon appellant continued to yell and swear. Officer Hindman then placed appellant under arrest for eluding a police vehicle.

Transportation of appellant to the jail, the officers decided, would be in a city patrol car. During the process of placing him in the car, while facing the officers in a sitting position, appellant again began to kick and swear. Officer Hindman was severely kicked in the face and chest. A leg restraint was finally placed on appellant's ankles to prevent any further incidents. He was then transported to the Meade County Jail whereupon he was also placed under arrest for driving while under the influence of alcohol and/or drugs.

A two-part information was filed on August 17, 1982, charging appellant with four offenses: I) driving while intoxicated, II) eluding a police vehicle, III) resisting arrest, and IV) aggravated assault. The second part charged appellant with a third offense D.W.I. He pleaded not guilty and not guilty by reason of mental illness to each offense. A jury trial was held and appellant was found guilty on each count of the information on December 15, 1982. On January 4, 1983, appellant pleaded guilty to the third offense D.W.I. charge. He was sentenced to two years in the South Dakota State Penitentiary under Count I, and one year in the Meade County Jail for each of Counts II and III, and four years in the State Penitentiary on Count IV, sentences to be served concurrently.

Part two of the information is not a subject of this appeal.

Appellant's first claim of error rests upon the charge of aggravated assault pursuant to SDCL 22–18–1.1(3).[1] The information charged in Count IV that appellant "did cause bodily injury to a law enforcement officer ...." Appellant objected to the wording of the information as failing to state a crime in that one of the essential elements of aggravated assault is that an individual "knowingly" cause bodily injury. The information was not corrected.

Appellant admits that such a defect may be cured at trial through the giving of jury instructions as to all the necessary elements of the offense. *See State v. Larson,* 294 N.W.2d 801 (S.D.1980); *State v. Williams,* 297 N.W.2d 491 (S.D.1980). However, he contends no correction was made in that the particular jury instructions also fail to set forth the necessary knowledge requirement as an essential element of the crime of aggravated assault of a police officer.[2] Appellant claims the trial court's failure to instruct on this element was prejudicial error.

We would agree with appellant's claim of error were it not for the rule that " '[j]ury instructions are to be considered as a whole, and if the instructions when so read correctly state the law and inform the jury, they are sufficient.' " *State v. Fox,* 313 N.W.2d 38, 41 (S.D.1981). We do not dispute that the crime of aggravated as-

sault under SDCL 22–18–1.1(3) requires the showing of an attempt to cause or the *knowing* causation of any bodily injury. *State v. Feyereisen,* 343 N.W.2d 384 (S.D. 1984). As an essential element of the crime, the term "knowingly" should have been included in the jury instructions. Although jury instructions 24 and 25 fail to set out all of the elements of the offense, jury instruction 26 does discuss the particular intent required for a conviction under SDCL 22–18–1.1(3). That instruction reads in part:

> In a crime such as that of which the Defendant is charged in Count IV of the information, there must exist a union or joint operation of act or conduct and certain specific intent.
>
> In the crime of Aggravated Assault there must exist in the mind of the perpetrator the specific intent to cause bodily injury to Oren Hindman, unless such intent so exists that [sic] a crime is not committed.

Knowledge, in this instance, may be inferred from the statement that an individual must intend to cause bodily harm. The necessary intent element was adequately set out in this jury instruction and was "sufficient to correct the defect in the information." *Larson,* 294 N.W.2d at 802.

Appellant argues that the crimes of eluding a police vehicle under SDCL 32–33–18[3] and resisting arrest under SDCL 22–11–4(1)[4] are specific intent crimes. He claims

**1.** SDCL 22–18–1.1(3) provides:

Any person who:

    \*    \*    \*    \*    \*    \*

(3) Attempts to cause or knowingly causes any bodily injury to a law enforcement officer or other public officer engaged in the performance of his duties ...

is guilty of aggravated assault. Aggravated assault is a Class 4 felony.

**2.** Jury instruction 24 provided:

It is provided by a statute of this State that any person who causes any bodily injury to a law enforcement officer or other public officer engaged in the performance of his duties is guilty of the crime of aggravated assault.

Jury instruction 25 provided:

The essential elements of the offense of aggravated assault as charged in the information,

each of which the State must prove beyond a reasonable doubt are:

1. That the defendant caused bodily injury to Oren Hindman.

2. That Oren Hindman was a law enforcement officer engaged in the performance of his duties as [sic] that time.

**3.** SDCL 32–33–18 provides in part:

Any driver of a motor vehicle who intentionally fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police vehicle, when given visual or audible signal to bring the vehicle to a stop, shall be guilty of a misdemeanor as provided by § 32–33–19.

**4.** SDCL 22–11–4(1) provides:

Any person who intentionally prevents or attempts to prevent a law enforcement officer or

it was prejudicial error not to instruct the jury as to this fact. Appellant also requested an instruction on the doctrine of "diminished capacity" which may be invoked in determining whether an individual was capable of forming the necessary intent required for a "specific intent crime."

"Specific intent has been defined as 'meaning some intent in addition to the intent to do the physical act which the crime requires,' while general intent 'means an intent to do the physical act — or, perhaps, recklessly doing the physical act — which the crime requires.' " *State v. Rash*, 294 N.W.2d 416, 417 (S.D.1980). Relying upon the authority of the Michigan Court of Appeals in *People v. Lerma*, 66 Mich.App. 566, 569–70, 239 N.W.2d 424, 425–26 (1976), this Court further stated in *Rash*, 294 N.W.2d at 417:

> [S]pecific intent crimes would be limited only to those crimes which are required to be committed either "purposefully" or "knowingly", while general intent crimes would encompass those crimes which can be committed either "recklessly" or "negligently". Thus, in order to commit a specific intent crime, an offender would have to subjectively desire or know that the prohibited result will occur, whereas in a general intent crime, the prohibited result need only be reasonably expected to follow from the offender's voluntary act, irrespective of any subjective desire to have accomplished such result.

From this definition, appellant argues we need only determine whether a crime must be committed either purposefully or knowingly, or whether it can be committed either recklessly or negligently. If the former, then it is a specific intent crime. Appellant contends that use of the term "intentionally" in both SDCL 32–33–18 and SDCL 22–11–4(1) indicates these are "specific intent" crimes. Therefore, the trial court erred in not giving an instruction regarding specific intent.

jailer, acting under color of his authority, from effecting an arrest of the actor or another, by:

Confusion often seems to accompany any attempt to distinguish what is meant by the phrases "specific intent," and "general intent." The terms have different connotations in different contexts. A reading of the opinion in *Lerma* illustrates this confusion. In its attempt at defining these terms, the Michigan Court felt "[a] much more workable definition would center upon the several mental states set forth in the various proposed criminal codes." *Lerma*, 66 Mich.App. at 569, 239 N.W.2d at 425. Thus, the terms "specific" and "general" were analyzed with regard to the mental state requirements of "purposely," "knowingly," "recklessly," and "negligently."

However, these code terms stem from "the general notion that except for strict liability offenses some form of mental state is a prerequisite to guilt." LaFave & Scott, *Handbook on Criminal Law* § 28, at 201 (1972). They are used to describe the "mens rea" or the mental state which must accompany an act (actus reus) in order for that act to constitute a crime. They are terms designating what might be called "actual intent," i.e., was the act voluntary or involuntary?

> Use of the phrases "criminal intent" and "general criminal intent" in the broad sense of punishable blameworthiness, has caused some confusion when actual intention was the idea to be expressed. At times the phrase "specific intent" has been employed for this purpose, but actual intention can be expressed without the use of this phrase and it should be reserved for a more important meaning.

Perkins, *Criminal Law* at 762 (2nd ed. 1969) (footnote omitted).

■ Specific intent with regard to mental state means what is the "particular" intent, i.e., is the crime restricted to those who act purposely or does it include those who act only recklessly, etc.? The phrase "specific intent" has an entirely different

(1) Threatening to use physical force or violence against the law enforcement officer or jailer or any other person[.]

connotation when used with reference to such doctrines as "diminished capacity" and "voluntary intoxication."[5] "Some crimes require a specified intention in addition to the intentional doing of the *actus reus* itself,—an intent specifically required for guilt of the particular offense...." Perkins, *supra*. LaFave & Scott, *Handbook on Criminal Law* § 28, at 202 (1972), states this is the most common usage of "specific intent." The term "designate[s] a special mental element which is required above and beyond any mental state required with respect to the *actus reus* of the crime." LaFave & Scott, *supra*. Crimes such as larceny and burglary provide good examples:

> Common law larceny, for example, requires the taking and carrying away of the property of another, and the defendant's mental state as to this act must be established, but in addition it must be shown that there was an "intent to steal" the property. Similarly, common law burglary requires a breaking and entry into the dwelling of another, but in addition to the mental state connected with these acts it must also be established that the defendant acted "with intent to commit a felony therein."

LaFave & Scott, *supra*.

The concept of intent as set out in *Rash*, dealing with desired results, merely denotes, again, the type of mens rea which accompanies the act. That is to say, the "state of mind of the actor existing at the time he commits the offense, [which] may be determined from his acts, conduct and inferences fairly deducible from the circumstances." *Gibson v. State*, 55 Wis.2d 110, 115, 197 N.W.2d 813, 817 (1972). Whether one consciously desires a result or is practically certain that a particular result will follow an act goes toward determining whether an act was done knowingly, purposely, recklessly, or negligently. A crime which specifies that an act be done "purposely" may be specific in that it restricts the necessary mens rea for culpability, however, that does not make it a "specific

intent crime" as the term is known in relation to the doctrine of "diminished capacity."

■ Use of the term "intentionally" with regard to the crimes of eluding a police vehicle and resisting arrest merely designates that culpability requires something more than negligence or recklessness. However, mere use of that term does not designate an additional mental state beyond that accompanying the act. Therefore, these are not "specific intent" crimes. There was no error in failing to instruct with regard to specific intent.

■ Appellant further cites as prejudicial error the trial court's refusal to instruct the jury on the doctrine of diminished capacity with regard to the crimes of eluding a police vehicle, resisting arrest, and aggravated assault. Though a form of this doctrine does exist in South Dakota (*see* SDCL 22–5–5; *State v. Kills Small*, 269 N.W.2d 771 (S.D.1978)), the doctrine may not be invoked as to general criminal intent crimes. *See State v. Primeaux*, 328 N.W.2d 256 (S.D.1982). We have noted that the crimes upon which appellant wishes to base this doctrine are general criminal intent crimes. Therefore, there was no error in failing to instruct on diminished capacity.

Appellant requested several jury instructions regarding the amount of force a police officer may use in making an arrest and the amount of force an individual may use in self-defense. These instructions were also denied. Appellant contends the police were the aggressors in this altercation because they attempted to handcuff him immediately, with no words on their part. He claims that unreasonable force was used in the arrest and that he was justified in reacting in self-defense. Therefore, it was prejudicial error not to instruct the jury on these issues.

■ "To prove a defense of self-defense, appellant must introduce sufficient evidence to create a reasonable doubt as to

5. *See* Hall, *Intoxication and Criminal Responsi-* bility, 57 Harv.L.Rev. 1045 (1944).

justification." *State v. Cook,* 319 N.W.2d 809, 812 (S.D.1982); *State v. Mier,* 74 S.D. 515, 55 N.W.2d 74 (1952). If instructions on self-defense or defense of others are supported by the evidence, they are necessary and it is error not to give them. *United States ex rel. Means v. Solem,* 480 F.Supp. 128 (D.S.D.1979). However, "[a] trial court need not instruct on matters that find no support in the evidence." *State v. Chamley,* 310 N.W.2d 153, 155 (S.D.1981).

■ Though it is true defendant made no threatening gestures upon being stopped, he had threatened Officer Hindman on several prior occasions. Because of these threats and appellant's erratic driving behavior, Officer Hindman felt it necessary to take the precaution of handcuffing appellant immediately. There is no indication that, other than the physical movements necessary to handcuff appellant, unnecessary or excessive force was used. Appellant began jerking his arm, kicking and swearing immediately upon the officer's attempt to handcuff him.

There is nothing in the evidence to show that Officer Hindman went beyond the scope of his duties in effecting this arrest, nor that appellant was justified in reacting in self-defense. Thus, there was no error in failing to instruct on these issues.

Defendant contends that he offered sufficient evidence to show that he was lured into the commission of physical acts by the police officers, and that he did nothing until such time as a physical attack was begun upon him by Trooper Hindman. Therefore, the jury should have been instructed as to the defense of entrapment.

■ Entrapment is defined as " '[t]he inducement of one to commit a crime not contemplated by him for the mere purpose of instituting criminal proceedings against him.' " *State v. Nelsen,* 89 S.D. 1, 7, 228 N.W.2d 143, 146 (1975). *Nelsen* sets out two components which must be established for an entrapment defense: Defendant must show police inducement to commit the crime, and that prior to this inducement he

was not predisposed to commit the criminal act. The test is one of "origin of intent," and "if there is no conflict in the evidence as to where criminal intent originated, then it is a question of law to be decided by the trial court." *State v. Nagel,* 279 N.W.2d 911, 916 (S.D.1979).

■ Appellant's contention is totally without merit. The fact that, perhaps, the manner of arrest may have provoked Huber's outburst in no way raises even the suggestion that the intent to kick and swear, originated with the police. "The trial court was correct in refusing [the] requested entrapment instruction. There was insufficient evidence to put that issue to the jury." *Nagel,* 279 N.W.2d at 917.

Prior to trial, appellant presented a motion in limine requesting that the State be restricted from "presenting evidence of any other crimes, wrongs, statements or acts of the Defendant ... alleged to have been done or made prior to the date of the allegations contained in the Information...." In particular, appellant was concerned with several threatening statements he had made to police officers on previous occasions and several related misdemeanor offenses. Appellant advocated these to be too prejudicial for admission. The motion was denied. The court indicated these incidents might be used for purposes of showing motive or intent, and for impeachment purposes and considered that a grant of the motion at that time would be premature. Appellant now claims prejudicial error in that several incidents were testified to at trial.

■ Evidence of other crimes, wrongs, or acts may be admissible as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," *State v. Houghton,* 272 N.W.2d 788, 790 (S.D.1978), provided its probative value is not substantially outweighed by the danger of unfair prejudice. *State v. Rose,* 324 N.W.2d 894, 895 (S.D.1982). "The standard of review in this court is whether the trial court abused its discretion in admitting the evidence." *Id.* at 895.

■ On one occasion, Officer Hindman was allowed to testify to an encounter he had with appellant in December of 1981, at which appellant had threatened, "[t]he next time you see this black Camaro you had better be ready, because I'm going to blow your pig shit away." Appellant also threatened to blow the officer's head off and blow his brains out. This testimony is highly relevant to the issue of intent in eluding police and is further relevant to whether or not unjustifiable force was used in arresting appellant. This testimony relates directly to the several issues at trial, is highly probative and, therefore, admissible.

■ Appellant also objects to questions regarding a D.W.I. incident which occurred March 10, 1982, just two months prior to the present altercation. However, it was appellant who opened the door to this questioning by mentioning the D.W.I. and an accident surrounding it. Appellee had every right to pursue the matter further on cross-examination.

■ Finally, a police officer testified to a threat made on May 12, 1982, just three days before the incident at issue here.. On that date, appellant stated that "if he ever seen red lights in his mirror again that there would be a chase." This statement and the events surrounding its making were admitted as rebuttal to several charges of police harassment, that police initiated the events of May 15, 1982, and that appellant had no intention of eluding police. Therefore, there was no abuse of discretion in admitting the above testimony.

■ Appellant claims there was insufficient evidence to sustain a D.W.I. conviction. "In determining the sufficiency of evidence on appeal, the test is whether there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt." *State v. Cook*, 319 N.W.2d at 811. "In making such a determination, this Court will accept that evidence, and the most favorable inferences that can be fairly drawn therefrom, which will support the verdict." *State v. Jorgensen*, 333 N.W.2d 725, 728 (S.D.1983).

Officer Hindman pursued appellant initially because he was driving erratically and at an excessive speed. Upon handcuffing appellant, Hindman detected the odor of alcohol on appellant's breath. Hindman also noticed that appellant's eyes were glassy and bloodshot. Defense testimony from appellant's companion indicated that appellant had been at a bar, drinking, prior to the encounter with Officer Hindman.

In *State v. Croucher*, 326 N.W.2d 98, 99 (S.D.1982), upon substantially similar facts, this Court held that an argument regarding insufficiency of the evidence to sustain a D.W.I. conviction was "so clearly without merit as not to warrant discussion." Here, there was sufficient evidence to sustain the jury's finding.

Finally, appellant contends that because the State failed to introduce evidence directly contradicting that of appellant's experts, there was no issue of fact remaining as to appellant's mental illness. He insists this issue should not have gone to the jury.

■ The Supreme Court of Alaska rejected an identical argument in *Bowker v. State*, 373 P.2d 500 (Alaska 1962), reasoning that to accede would be to transfer the jury's function to the psychiatrist and to substitute a trial by experts for a trial by jury.

We shall not adopt a rule which would treat medical testimony as conclusive merely because it is not disputed by other medical testimony. The jury should be free to make an independent analysis of the facts on which the expert's opinion rests, and thus exercise their historic function of passing on the credibility of the witness.

*Bowker*, 373 P.2d at 501–02. *Accord, State v. Ellingwood*, 409 A.2d 641 (Me. 1979) and *People v. Duffy*, 67 Mich.App. 266, 240 N.W.2d 771 (1976).

[E]ven though the evidence may be supportive of the defense of insanity, it is the province of the trier of fact, be it

**476**

judge or jury, to determine whether the defendant was sane or insane at the time of the commission of the crime.

... [T]he fact that the medical experts testified that it was their opinion that defendant was insane at the time of commission cannot allow a trial judge to take away the ultimate finding of insanity from the triers of fact. The weight and credibility to be given to testimony by an expert qualified to render an opinion rests with the fact finder and cannot be delegated under [the] law.

*Duffy,* 240 N.W.2d at 772 (citations omitted). The jury is the exclusive judge of the credibility of witnesses and the weight of the evidence in South Dakota. *State v. Bonrud,* 246 N.W.2d 790 (S.D.1976). This includes the weight to be accorded an expert's testimony concerning the sanity of a defendant. *State v. Graves,* 83 S.D. 600, 163 N.W.2d 542 (1968).

■ The trial judge herein did not err in submitting the issue of mental illness to the jury. It was their responsibility to weigh the opinions of the experts and determine if, indeed, appellant was capable of committing the offenses charged.

The four judgments of conviction are affirmed.

FOSHEIM, C.J., and WOLLMAN and MORGAN, JJ., concur.

DUNN, Retired Justice, concurs in part, dissents in part.

DUNN, Retired Justice, participating.

WUEST, Circuit Judge, Acting as Supreme Court Justice, not participating.

DUNN, Justice (concurring in part, dissenting in part).

I would reverse the aggravated assault conviction. The information and the specific jury instruction on aggravated assault failed to include an essential element of the crime. This was in spite of the fact that the error was called to the attention of the trial court at the time of trial.

I would affirm the convictions on the remaining charges.